No. 80-74

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

BEVERLY J. TEFFT,

                Petitioner and Appellant,

    vs.

ALFRED E. TEFFT,

                Respondent and Respondent.

---

Appeal from:  District Court of the Eighth Judicial District,
              In and for the County of Cascade.
              Honorable Joel G. Roth, Judge presiding.

Counsel of Record:

    For Appellant:

        Randono and Donovan, Great Falls, Montana

    For Respondent:

        Smith, Baillie & Walsh, Great Falls, Montana

---

                Submitted on briefs: February 5, 1981

                      Decided: May 29, 1981

Filed:  MAY 29 1981

_Thomas J. Kearney_
                        Clerk

Mr. Justice Frank B. Morrison, Jr., delivered the Opinion of the Court.

On February 27, 1980, the District Court entered a decree which dissolved the marriage of petitioner and respondent, established child custody and child support, divided the real and personal property comprising the marital estate and ordered that each party pay his or her attorney fees. This decree was amended March 25, 1980, and from that amended order, petitioner appeals.

Beverly and Alfred Tefft married on November 20, 1965. Alfred, a widower, had four children from his prior marriage. These children were adopted by Beverly following the marriage. Beverly and Alfred had no other children.

Beverly is a tenured teacher working at Charles M. Russell High School in Great Falls, Montana. Her income for 1978 was approximately $15,000. Alfred is a vice president of the Cogswell Agency, an established insurance firm in Great Falls. His income for 1978 from this firm was approximately $34,250.

At the time the decree was entered the ages of the four children were: Gregory, 21; Terrie, 19; Tracy, 18; and Kristie, 17. The decree granted custody of Kristie to Beverly. The court ordered Alfred to pay $200 per month child support for Kristie, Tracy and Terrie. The decree recognized that Terrie suffered from a learning disability which slowed her educational process. Alfred's obligation to support the three daughters extended until each was graduated from high school or otherwise became emancipated. The decree further provided that Alfred could apply his daughters' social security benefits on his support obligation.

The decree ordered that Beverly was entitled to use of the family home until the three daughters were graduated from high school or otherwise became emancipated. The home and furnishings were then to be sold and the net proceeds divided equally. No specific provision was made regarding mortgage payments during the interim.

The remaining real and personal property (with the exception of specified family heirlooms conceded to Alfred) were valued by the District Court and divided on a 50-50 basis. Certain investment properties acquired during the marriage were ordered to be sold as soon as possible and the net proceeds divided equally. Attorney fees were made the responsibility of each party.

Motions to alter or amend the decree were filed by both parties. The District Court amended the original decree. The amending order eliminated Alfred's obligation of support for the adult daughters, Terrie and Tracy. The order increased the monthly support obligation for Kristie to $250. Alfred could apply Kristie's social security benefits toward his support obligation. The social security benefits of Terrie and Tracy were ordered their own property, and the two were advised to apply for the benefits in their individual names.

The amending order also altered the original decree by allowing Alfred to pay Beverly half of the value placed on the investment properties instead of selling the properties and dividing the proceeds. Under this amendment Beverly was given a judgment of $17,346.50 for her interest in the investment properties.

The following issues are dealt with on appeal:

1. Whether petitioner's motion to alter or amend the original decree was timely heard as prescribed by Rule

59(d)(g), M.R.Civ.P.?

2. Whether this appeal is limited solely to the matters dealt with in the amending order of the District Court because the petitioner's notice of appeal only designated the amending order and not the original decree?

3. Whether the District Court abused its discretion by not awarding child support for Terrie and Tracy, ages 19 and 18, respectively?

4. Whether the District Court erred in allowing a $200 per month credit against child support for social security payments received?

5. Whether the District Court erred in failing to properly value the investment properties in the marital estate?

6. Whether the District Court erred by effecting a 50-50 property distribution of the marital estate?

7. Whether the District Court erred in not awarding attorney fees to the petitioner?

The first two procedural issues must be addressed at the outset. Rule 59(g), M.R.Civ.P., states that motions to amend a judgment must be heard and determined within the same time limitations which apply to motions for new trial. Rule 59 (d), M.R.Civ.P., sets forth those time limitations. This provision states:

> "Hearing on the motion shall be had within 10 days after it has been served . . . except that at any time after the notice of hearing on the motion has been served the court may issue an order continuing the hearing for not to exceed 30 days. In case the hearing is continued by the court, it shall be the duty of the court to hear the same at the earliest practicable date thereafter, and the court shall rule upon and decide the motion within 15 days . . .

> "If the motion is not noticed up for hearing and no hearing is held thereon, it shall be deemed denied as of the expiration of the period time within

which hearing is required to be held under this Rule 59."

In the case at bar, petitioner filed and served a motion to amend on March 6, 1980. Because service was accomplished by mail, an additional three days must be added to the time limitations set forth in Rule 59(d). Rule 6(e), M.R.Civ.P. Therefore, the hearing on this motion to amend was either required to be held within 13 days, commencing on March 7, 1980, or was required to be continued by the court within 13 days, commencing with March 7, 1980.

On March 18, 1980, the District Court, sua sponte, entered an order setting a hearing date on petitioner's motion to amend (as well as respondent's motion to amend of March 7, 1980) for March 21, 1980. This order was filed on March 19, 1980, which was the last day of the 13-day period.

The court's order of March 18, 1980, constitutes a continuation of the hearing date on the motions to alter or amend. That order did set a hearing date within the 30-day period required by Rule 59(d), M.R.Civ.P. The District Court then ruled on the motions to alter or amend within five days following the hearing. Therefore, the District Court's actions regarding the petitioner's motions to alter or amend the original decree comply with the statutory time requirements set forth in Rule 59(d), M.R.Civ.P. The amending order of the District Court is valid.

Respondent's second procedural issue concerns the scope of the petitioner's notice of appeal. On April 11, 1980, petitioner filed a notice of appeal stating that ". . . Beverly J. Tefft . . . hereby appeals . . . from the decision of Judge Joel G. Roth dated March 24, 1980, amending his Findings of Fact and Conclusions of Law and Decree." Respondent argues that this appeal must be limited solely to

issues arising from the District Court's amending order because Rule 4(c), M.R.App.Civ.P., provides that: "The notice of appeal . . . shall designate the judgment or order appealed from." Respondent contends that the amending order and original decree in this action are necessarily separate and distinct; thus respondent argues that a specific notice of appeal from the original decree is required before review of that decree is possible.

Respondent's contention ignores the interdependent nature of the amending order and the original decree. Finality of the original judgment must await a determination by the lower court regarding motions to amend or alter. This is evidenced by Rule 5, M.R.App.Civ.P., which suspends the running of the time within which an appeal must be taken, while a motion to alter or amend a judgment is being considered. The intertwinement of an amending order and an original judgment necessitates review of all issues contained in both; thus an appeal from either incorporates all issues of both for review. This holding is in keeping with the philosophy of modern appellate practice that technical defects of procedure should not bar a party from access to the courts. J.C. Penney, Inc. and F.W. Woolworth Co. v. Employment Security Division (1981), ___Mont.___, ___P.2d___, 38 St.Rep. 694.

The situation involving an appeal from an amending order, as is the case here, must be distinguished from situations where a party appeals from one order in a series of separate and distinct orders, or from one part of a divisible judgment. This Court has previously held that a failure to designate all orders or the entire judgment in such situations limits the reviewing court solely to the

matters designated in the appeal notice. State v. Todd (1945), 117 Mont. 80, 158 P.2d 299; Sperling v. Calfee (1888), 7 Mont. 514, 19 P. 204. However, an amending order and an original judgment cannot be viewed as separate and distinct or divisible and, therefore, this rule cannot be applied in the case at bar. Petitioner's notice of appeal is sufficient to preserve all issues for review.

Petitioner's next issue on appeal concerns the District Court's termination of child support for the two adult daughters, Terrie and Tracy. Petitioner contends that such action constitutes error on the part of the lower court. However, in Chrestenson v. Chrestenson (1979), ___ Mont. ___, 589 P.2d 148, 36 St.Rep. 103, this Court determined that a parent's legal obligation under Montana constitutional and statutory provisions terminated when a child became an adult. The Chrestenson court further noted that this determination did not contradict section 48-330(3), R.C.M., 1947, (now section 40-4-208, MCA) which allows: "parties to agree in writing or expressly provide in the decree of dissolution for termination of child support at an agreed upon age or time." Chrestenson at 150. In the case at bar, the parties did not reach any agreement.

In the original decree of the District Court, respondent Alfred Tefft was ordered to pay $200 per month for each of his three daughters, who were still residing at the family home with petitioner Beverly Tefft. This support obligation was to end when each girl completed high school. Following the hearing regarding the motions to amend, the District Court altered its findings, conclusions, and decree by terminating the support obligation as to Terrie and Tracy. These daughters were 19 and 18, respectively, at the time the original decree was entered. Since no agreement between the parties existed regarding support for these adult chil-

dren, the District Court was merely conforming its original decree with the law espoused in <u>Chrestenson</u>. This portion of the order of the District Court is affirmed.

Petitioner next contends that the District Court erred in allowing respondent, Alfred Tefft, to apply social security benefits received by him on behalf of Kristie, the minor child, toward his support obligation. The District Court ordered Alfred to pay $250 per month for Kristie. The social security benefits receivable on behalf of Kristie amounted to approximately $200 per month. Thus, in effect, the court's order required Alfred to pay only $50 per month child support from his own funds.

Section 40-4-204, MCA, sets forth relevant factors a court must look to in determining child support. The factors are:

"(1) the financial resources of the child;

"(2) the financial resources of the custodial parent;

"(3) the standard of living the child would have en- joyed had the marriage not been dissolved;

"(4) the physical and emotional condition of the child and his educational needs; and

"(5) the financial resources and needs of the noncus- todial parent."

The lower court heard testimony from both Beverly Tefft and Alfred Tefft. Evidence existed (although not extensive) regarding the factors set forth above. The District Court's order acknowledged that the social security benefits were the property of Kristie. The court determined that Kristie needed $250 support each month, and that $200 of such amount would be supplied by her own financial resources.

Although Alfred Tefft has an income of more than $34,000 a year and pays only $50 per month child support, this fact alone is not determinative that the lower court abused its

discretion. The need of the child, as well as the noncustodial parent's ability to pay, must be considered. Section 40-4-204, MCA. We cannot say the District Court abused its discretion and, therefore, the order of support is affirmed.

Petitioner specifies several errors regarding the District Court's valuation of the marital estate for purposes of distribution. After careful review, we find that the court erred in disposing of the marital estate.

The decree provides that the family residence on 1017 Durange, Great Falls, Montana, was to be used by Beverly and the three daughters until the youngest was graduated from high school or otherwise became emancipated. Upon such occurrence, the home and furnishings were to be sold as soon as possible and the net proceeds divided equally.

No order was made regarding the $250 monthly mortgage payment. Under the decree Alfred has no obligation to make the payment. Beverly, who lives in the home, will satisfy this obligation thereby building future equity for Alfred. Such an arrangement will result in an inequitable division of assets at the time of sale and cannot be sustained.

Regarding Alfred's investments, the District Court made the following findings, pertinent to this decision:

| Asset | Current Market Value | Amount Owed Thereon | Net Value |
|---|---|---|---|
| 40 Acres Acquired From American Montana Land | $ 2,500 | | $2,500 |
| American Montana Land 1/6th Interest | Unknown | Unknown | Unknown |
| Command Partners 1/7th Interest | $ 6,500 | | $6,500 |
| West American Lands Inc. 1/7th Interest | $12,285 | $12,285 | None |

The District Court originally ordered that this property, along with all other investment property, be sold and the

proceeds divided equally. In its order amending the decree, the District Court altered this and ordered that Alfred pay to Beverly half of the equity. The court failed to determine a value for one of the properties. Thus the valuation on which the disposition is based is inadequate, and this cause must be remanded. Hamilton v. Hamilton (1980), ___ Mont. ___, 607 P.2d 102, 37 St.Rep. 247.

Additionally, problems arise regarding the court's determination of Alfred's equity in these properties, thus creating problems in the net worth determination. Alfred testified twice in this matter. In December 1979, Alfred stated he owned a 1/6th interest in a corporation denominated named American Montana Land. This corporation purchased 250 acres of recreational land. Alfred testified that the corporation owed $26,500 on the property. He stated that the corporation had deeded 40 acres of the land to him individually. Alfred further testified he didn't know if any encumbrances, other than the one on the entire tract, existed on this 40-acre parcel. Alfred said he didn't know what comparable land in the same area was selling for but speculated that his parcel was worth $2,000-$3,000. The court accepted this valuation, placing a $2,500 value on the 40 acres. The court also found that Alfred's 1/6th interest in the corporation had an unknown value.

When Alfred testified in January 1980, several aspects of this transaction had changed. The corporation which owned the 250 acres of recreational land was now called West American Land Corporation. Alfred did not explain the change in corporation ownership, but apparently West American Land Corporation succeeded to the interest of American Montana Land. His interest in West American Land was 1/7th.

No mention was made of the 40-acre tract of land deeded to him. Alfred estimated that the corporation land had no equity. In addition to the $26,500 encumbrance originally testified to, Alfred stated that the land was pledged as security for a $60,000 note at a local bank. The record is unclear on whether Alfred's 40-acre tract is so encumbered. However, there apparently is an $86,500 debt against the corporate land. The District Court found that Alfred's interest in the West American Lands Corp. had no value because the value of the land did not exceed the amount of its encumbrance. In making this determination the court considered the $60,000 note to be a liability of the corporation.

The problem resulting from this, is that the $60,000 borrowed by West American Land was used as investment funds in Alfred's latest enterprise, Command Partners, franchise. Alfred testified that he and six other people contributed $6,500 each toward the purchase price of the franchise plus the $60,000 obtained by pledging the recreational land. In the District Court's findings, however, this $60,000 was not added as equity; although it was calculated as a liability in valuing the corporate stock of West American Land. The court found that Alfred's interest in Command Partners was only $6,500.

From this testimony it is apparent that a true net worth of these properties was not made. Encumbrances on the varying properties were not clearly distinguished, nor was the proper equity in these properties calculated.

Petitioner did not seek a maintenance award, but only an equitable disposition of the marital estate. The District Court found, regarding the relative positions of both Beverly and Alfred, that:

". . . the needs of the parties with regard to shelter, food, clothing, transportation, utilities, and the normal expenses of living are relatively equal . . . the Petitioner Beverly and Respondent Alfred have an equal opportunity for the future acquisition of income and capital assets but the Court finds that Respondent Alfred is presently earning over twice the amount of the income of Petitioner Beverly and will probably continue to do so . . . the contributions of the Petitioner Beverly and the Respondent Alfred to the family unit are equal."

Beverly currently earns approximately $15,000 per year. She is paying $250 per month for mortgage payments on the house. Three children still reside at the family residence. These children do not have regular employment, thus requiring some financial help. Alfred is obligated to pay support for only one of the children. Reality dictates that under these conditions Beverly would have a very poor opportunity for the future acquisition of capital assets and income.

On the other hand, Alfred earns approximately $34,000. He has been receiving annual raises of approximately $2,000 per year. His position in the established insurance firm, Cogswell Agency, is secure. His only personal obligation via this dissolution is child support of $50 per month. Clearly, Alfred has far greater opportunity for future acquisition of capital assets and income.

In light of Smith v. Smith (1981), ___Mont.___, 622 P.2d 1022, 38 St.Rep. 146, this 50-50 distribution cannot stand. The court's finding that both parties have equal access to the future acquisition of capital is clearly erroneous and an abuse of discretion. Zell v. Zell (1980), ___Mont.___, 613 P.2d 702, 37 St.Rep. 1131.

Lastly, petitioner contends that the District Court erred in not awarding her attorney fees. Regarding attorney fees, the District Court found that:

"Although Petitioner Beverly seeks her attorney fees herein, the Court finds that upon consideration of the income of Petitioner Beverly and

the property distribution ordered herein, that each party is able to pay his/her own attorney fees and costs and is responsible for his/her own attorney's fees and costs incurred herein."

Based on this finding the District Court ordered each party to pay his or her own attorney fees.

Petitioner argues that the District Court's improper determination of net worth and improper property distribution necessitates reversal of the trial court's decision not to award attorney fees to Beverly Tefft. In light of this Court's decision to remand regarding the issues of marital estate net worth and distribution, we believe it best to vacate the order of the District Court regarding attorney fees and leave it to the discretion of the trial court as to whether modification of the attorney fees order is necessary following rehearing in accordance with this opinion.

In summary we affirm the District Court's decree as it relates to child support. We reverse the District Court on (1) failure to specifically provide for payment of the home mortgage, (2) failure to value all marital assets, (3) failure to properly calculate net worth, and, (4) failure to consider the husband's considerably greater opportunity for accumulation of future assets.

The matter is remanded for hearing in accordance with this opinion.

_____
Justice

We concur:

_____

John Conway Harrison

Gene B. Daly

Daniel J. Shea