No. 90-578

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

IN RE THE MARRIAGE OF TERRI D. DURBIN, n/k/a TERRI D. WARD,

    Petitioner and Appellant,

and

EDWIN D. DURBIN,

    Respondent and Respondent.

FILED

DEC 19 1991,

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Tenth Judicial District,
In and for the County of Fergus,
The Honorable Peter L. Rapkoch, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        John R. Christensen argued; Christensen & Hubble,
Stanford, Montana.

    For Respondent:

        Michael G. Moses argued; Moses Law Firm, Billings,
Montana.

    For Amicus:

        Peggy Probasco, Special Assistant Attorney General,
Butte, Montana.

Submitted:  September 18, 1991

Decided:  December 19, 1991

Filed:

Clerk

No. 90-578

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

IN RE THE MARRIAGE OF TERRI D. DURBIN, n/k/a TERRI D. WARD,

       Petitioner and Appellant,

  and

EDWIN D. DURBIN,

       Respondent and Respondent.

FILED

DEC 19 1991

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Tenth Judicial District,
In and for the County of Fergus,
The Honorable Peter L. Rapkoch, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        John R. Christensen argued; Christensen & Hubble,
Stanford, Montana.

    For Respondent:

        Michael G. Moses argued; Moses Law Firm, Billings,
Montana.

Submitted: September 18, 1991

Decided: December 19, 1991

Filed:

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Terri D. Durbin, now known as Terri D. Ward (Terri), appeals the November 1, 1990 findings of fact, conclusions of law, and order of the Tenth Judicial District Court of Fergus County, Montana, which denied her cross-petition for modification of child support, denied her attorney fees and costs, and granted Edwin Durbin (Ed) a tax exemption for their son, Aaron. We reverse and remand.

Terri presents the following issues:

1. Did the District Court err in failing to modify child support payments to reflect change of circumstances, the children's ages, the standard of living the parties' minor children would have enjoyed had the marriage not been dissolved, and Ed's ability to pay increased child support?

2. Should Terri be awarded attorney fees and costs incurred in responding to Ed's petition for modification, and further, should she be awarded attorney fees and costs of appeal?

3. Did the District Court improperly allow Ed to claim a tax deduction for Aaron while not ordering him to pay any child support?

I

Terri married Ed on December 27, 1975, in Lewistown, Montana. The couple had two children, Aaron born July 9, 1976, and Shelley,

2

born November 3, 1979. On November 5, 1986, the couple divorced. The divorce decree 1) awarded the couple joint custody of the children, 2) awarded Terri primary physical custody of the children, 3) awarded Terri and Ed one tax deduction each for the children, and 4) required Ed to pay Terri monthly child support totaling $150 per child, except for two months in the summer, where he was to pay monthly child support totaling $75 per child.

On December 18, 1986, Ed lost his sight as a result of a work-related accident. Thereafter, Ed began to receive monthly Workers' Compensation benefits of $820. In June or July 1987, Ed received from his employer's Fireman's Fund disability insurance policy a lump sum payment of $5,000; he also began to receive monthly payments of $87 from this policy. In June 1987, Ed began to receive monthly Social Security benefits, which reduced the amount of monthly Workers' Compensation benefits he received. At this time, Ed's total monthly income, including Workers' Compensation benefits, Social Security benefits, and Fireman's Fund disability benefits was $1154.

In June 1987, Terri, on behalf of the children, began to receive monthly Social Security benefits totaling $174 per child. Ed ceased paying Terri child support at this time. Ed testified that he believed the Social Security benefits on behalf of the children served as a credit toward his child support obligation.

In December 1989, Terri received a degree in accounting from Eastern Montana College. In January 1990, she secured employment as a staff tax accountant in Portland, Oregon. She financed her schooling with student loans, totaling $11,539 as of June 1990. Terri's adjusted gross income was $11,759 in 1988 and $9,765 in 1989. In 1988 and 1989, Terri took tax deductions for both children on her income tax returns as she was able to prove to the Internal Revenue Service that she was providing over half of the children's financial support.

In May 1990, Ed received a lump sum settlement for his injuries totaling $373,557 after costs, expenses, and attorney fees. Additionally, as part of a structured settlement, Ed began receiving monthly payments of $3788 in July 1990, these payments guaranteed to continue for thirty years.

On May 21, 1990, Terri filed an action for an order to show cause in Oregon. On May 29, 1990, Ed petitioned the District Court for a modification of child support, custody, and visitation. On June 14, 1990, Terri responded to Ed's petition and cross-petitioned for past, current and future child support modification, attorney fees, and costs.

The District Court conducted a hearing on this matter on June 26 and 27, 1990. At the hearing, testimony revealed that Terri's approximate gross income for 1990 would be $26,411 and Ed's 1990 approximate gross income, including Social Security benefits,

Fireman's Fund disability insurance benefits, Workers' Compensation benefits, the structured settlement, and the interest on the lump sum settlement would be between $87,000 and $145,000, depending upon Ed's investment return. Testimony also revealed that Ed would continue to have this gross annual income for the remainder of his life, approximately sixty percent of this income being tax-free. At the time of the hearing, the Social Security monthly benefits on behalf of the children increased to $198 per child.

On November 1, 1990, the District Court 1) denied Ed's petition for modification of child support, custody, and visitation, 2) denied Terri's cross-petition for modification of past, current, and future child support, 3) denied Terri attorney fees and costs, and 4) granted Terri two tax deductions for the children in 1990 and granted Ed a tax exemption for their son, Aaron, beginning in 1991. From this judgment, Terri appeals.

II

Our standard of review for findings of fact in child support modification cases is whether the District Court clearly abused its discretion. In Re The Marriage of Hall (1987), 228 Mont. 36, 39, 740 P.2d 684, 686. Our standard of review for conclusions of law of a trial court is whether the District Court correctly interpret-

ed the law. Steer, Inc. v. Dep't of Revenue (1990), 245 Mont. 470, 474, 803 P.2d 601, 603.

## III

Did the District Court err in failing to modify child support payments to reflect change of circumstances, the children's ages, the standard of living the parties' minor children would have enjoyed had the marriage not been dissolved, and Ed's ability to pay increased child support?

Terri presents two arguments under this issue: 1) that the Social Security benefits on behalf of the children do not serve as a credit toward Ed's past, present, and future child support payments under the dissolution decree, and 2) that personal injury settlements, payment for future loss of income, Workers' Compensation benefits, Fireman's Fund disability insurance benefits, and Ed's Social Security benefits (collectively referred to as Ed's personal injury awards) should be considered income when determining a child support modification. Both arguments will be discussed separately below.

1.   Social Security Benefits on Behalf of the Children

The District Court in Conclusions 6 and 7 of its November 1, 1990 findings of fact, conclusions of law and order held:

> 6.   That Respondent, Ed Durbin, has paid in full all child support he was obligated to pay through June, 1987, at which time the social security benefits commenced,

6

said benefits being specifically for child support
payments from Respondent as the result of his total
disability resulting from his injury.

7. That the amounts of those social security payments
have been in excess of the amounts due under the Property
Division and Custody Agreement of the parties and also
exceed the Montana Child Support Guidelines for child
support. The Court therefore concludes that the Peti-
tioner is entitled to the child support payments of the
social security benefits therefor, paid by the Social
Security Administration. Petitioner is not entitled to
child support payments from the Respondent in excess of
the social security payments therefor until the amounts
determined under the Montana Guidelines exceed the social
security payments, and then only the excess over such
payments.

(Emphasis added.)

Terri argues that the District Court erred when it concluded that
the Social Security benefits she receives on behalf of the children
1) are a credit toward Ed's child support obligation from June
1990, and 2) relieve Ed of paying any back, current and future
child support under the dissolution decree.

This Court has addressed the issue of whether Social Security
benefits on behalf of a child serve as a credit toward a parent's
child support obligation on two different occasions. In Tefft v.
Tefft (1981), 192 Mont. 456, 457-59, 628 P.2d 1094, 1095, a
district court on March 25, 1980, amended a February 27, 1980
dissolution decree by allowing a father to credit the $200 monthly
Social Security benefits, received on behalf of his child due to
the child's learning disability, toward his $250 child support
obligation. The district court, in amending the dissolution

7

decree, considered these Social Security benefits as financial resources of the child under what is now § 40-4-204(2)(a), MCA. Tefft, 192 Mont. at 462-63, 628 P.2d at 1098. This Court affirmed when it found no abuse of discretion on the part of the district court. Tefft, 192 Mont. at 463, 628 P.2d at 1098.

In the case of In Re the Marriage of Gallant (1990), 241 Mont. 363, 364-65, 786 P.2d 1193, 1195, an action for past due child support, this Court held that Social Security benefits to a child due to the father's disability did not absolve the father's child support obligation under the dissolution decree. In Gallant, father was disabled at the time of the dissolution. The district court recognized father's disability and allowed him to forego child support until he received disability benefits. Father began to receive Workers' Compensation benefits one year later in 1981. Father, however, did not comply with child support under the dissolution decree. In 1985, father began to receive Social Security benefits for his disability; additionally the children began to receive monthly Social Security benefits, these benefits exceeding the amount of the father's monthly child support obligation. From 1986 to 1990, father failed to pay any child support. Father argued that he was in substantial compliance with his child support obligation under the dissolution decree due to, in part, the monthly Social Security benefits on behalf of the children. Gallant, 241 Mont. at 364, 786 P.2d at 1194. This Court

held that "[s]uch benefits in no way constitute an expenditure from the father." Gallant, 241 Mont. at 365, 786 P.2d at 1195.

Other jurisdictions addressing this issue have held:

1. Social Security benefits received as a result of a parent's retirement or disability are credited toward child support obligations. E.g. Cash v. Cash (Ark. 1962), 353 S.W.2d 348; Horton v. Horton (Ga. 1963), 132 S.E.2d 200; Schulze v. Jensen (Neb. 1974), 214 N.W.2d 591; Perteet v. Sumner (Ga. 1980), 269 S.E.2d 453; Boyes v. Boyes (Iowa 1976), 247 N.W.2d 265; Griffin v. Avery (N.H. 1980), 424 A.2d 175; Folds v. Lebert (La. App. 1982), 420 So.2d 715.

2. Social Security benefits are credited toward future child support obligations only upon modification of the original decree. E.g. Chase v. Chase (Wash. 1968), 444 P.2d 145; Joachim v. Joachim (1977), 393 N.Y.S.2d 63; In Re the Marriage of Cope (Or. 1980), 619 P.2d 883; Moritz v. Moritz (Minn. 1985), 368 N.W.2d 337.

3. Social Security benefits are not credited toward child support obligations when certain circumstances exist. E.g. Fowler v. Fowler (Conn. 1968), 244 A.2d 375; Oatley v. Oatley (Ohio 1977), 387 N.E.2d 245; Gerlich v. Gerlich (Minn. 1986), 379 N.W.2d 689; McClaskey v. McClaskey (Mo. App. 1976), 543 S.W.2d 832; In Re the Marriage of Sward (Minn. 1987) 410 N.W.2d 442.

9

Section 40-4-208(1), MCA, provides that a dissolution decree can be modified "only as to installments accruing subsequent to actual notice to the parties of the motion for modification." (Emphasis added.) See also 45 C.F.R. 302.70 and 303.106 (1990). We are therefore persuaded by the second category of cases holding that the receipt of Social Security benefits on behalf of a child and following a dissolution does not justify a credit toward child support obligation absent a court action modifying the dissolution decree.

Here, Ed petitioned the District Court for modification of child support on May 29, 1990, following receipt of his $373,557 lump sum settlement. Ed's petition served as actual notice to Terri of Ed's modification request. Under § 40-4-208(1), MCA, any modification of Ed's child support payments under the dissolution decree applies only to the child support payments accruing after May 29, 1990. We hold that based on § 40-4-208(1), MCA, the District Court incorrectly concluded that the Social Security monthly benefits on behalf of the children from June 1987 to May 1990 served as a credit toward Ed's child support obligation; accordingly, Ed is responsible for paying monthly payments of child support under the dissolution decree from June 1987 to May 29, 1990.

Still remaining is the issue of whether the Social Security benefits received on behalf of the children after May 29, 1990,

10

serve as a credit toward Ed's child support obligation. These benefits are paid as a result of Ed's disability and serve in part as a substitute for Ed's lost earning capacity. 42 U.S.C. § 402(c). Accordingly, we hold that these Social Security benefits on behalf of the children received after May 29, 1990, are to be treated as a contribution from Ed toward the support of his children and serve as a credit toward Ed's child support obligation.

In light of this holding, we overrule Tefft v. Tefft (1981), 192 Mont. 456, 628 P.2d 1094, to the extent of allowing a retroactive credit of Social Security benefits received on behalf of a child toward a parent's child support obligation prior to a modification of the dissolution decree. Additionally, we overrule In Re the Marriage of Gallant (1990), 241 Mont. 363, 786 P.2d 1193, to the extent that Social Security benefits on behalf of a child due to a parent's disability cannot under any circumstances be credited toward the parent's child support obligation.

2. Personal Injury Awards

Terri further argues that the District Court abused its discretion when it found that Ed's personal injury awards are not considered income when determining a child support modification. Terri argues that this finding is contrary to 1) the Uniform

11

District Court Child Support Guidelines[1], which provide that "all income, from whatever sources," is to be considered in child support modifications, and 2) the standards under § 40-4-204, MCA.

The District Court found that Ed's financial awards regarding his personal injury are "<u>damages</u> as a result of personal injury," and as such, are "for the purpose of compensating [Ed] for his losses to restore him to the <u>status quo ante</u>." The District Court further found that:

> Respondent is not richer than he was; he is now blinder than he was. Therefore, the Court finds that the moneys received by Ed Durbin in this settlement are not to be included and cannot be included in the determination of child support guidelines. Further, the Court finds that pursuant to the testimony concerning his settlement, Ed Durbin is responsible for one-half of any and all medical expenses to be incurred in the future by Ed Durbin. These moneys as a result of this personal injury must therefore be maintained and used for purposes of defraying the medical expenses to be incurred by Ed Durbin in the future, which are anticipated to be substantial.

Based on these findings, the District Court denied a modification of child support; however it is unclear as to whether the District Court indeed applied the Uniform District Court Child Support Guidelines to this case.

---

[1]Under § 40-5-209, MCA, Montana Department of Social and Rehabilitation Services adopted child support guidelines, Admin. R. Mont. 46.30.1501 to -.1549 (1990), which became effective July 13, 1990. Ed petitioned for child support modification on May 29, 1990. Therefore, these child support guidelines are not applicable to this case.

Section 40-4-204(3)(a), MCA, provides that a court shall apply the Uniform District Court Child Support Guidelines and the enumerated standards under § 40-4-204, MCA, when determining a child support modification "unless the court finds by clear and convincing evidence that the application of the standards and guidelines is unjust to the child or to any of the parties or is inappropriate in that particular case." We hold that under the facts of this case, the application of the Uniform District Court Child Support Guidelines regarding Ed's personal injury awards is inappropriate and falls within the exception contained in § 40-4-204(3)(a), MCA.

Here, the record indicates that if the Uniform District Court Child Support Guidelines were applied to Ed's gross monthly income, including his personal injury awards, Ed would be obligated to pay a monthly child support payment totaling $1,624.56. The record indicates that applying the Uniform District Court Child Support Guidelines to Terri's income results in a monthly child support obligation for Terri of $407.83. Subtracting Terri's obligation from Ed's results in Ed paying monthly child support of $1216.73.

The Uniform District Court Child Support Guidelines do not take into consideration Ed's medical expenses as a result of his personal injury. The Guidelines simply provide that all income from all sources is to be considered when determining a modification in child support. The District Court found that Ed's future

13

medical expenses "are anticipated to be substantial." Considering all of Ed's personal injury awards without considering Ed's actual and necessary needs including those resulting from his permanent disability is an inappropriate result. The noncustodial parent's financial resources and needs are to be considered by the District Court under § 40-4-204(2)(e), MCA.

Just as inappropriate, however, is to preclude Ed's personal injury awards when considering a child support modification in this instance. Ed's personal injury awards serve in part to replace the income he can no longer earn through employment. The enumerated standards of § 40-4-204(2), MCA, include the consideration of the financial resources of both parents, the needs of the noncustodial parent, the standard of living the children would have enjoyed had the marriage continued, and the age of the children. The record indicates that Ed's gross annual income, following the filing of his modification petition, is between $87,000 and $143,000. The record indicates that Terri's 1990 gross annual income is $26,411.

The record indicates that Edwin will be responsible for one-half of his future medical expenses and his Medicare insurance will cover the remaining one-half. The record, however, does not indicate how much these future medical expenses might be, or whether Ed has medical insurance beyond Medicare, which would cover any or part of Ed's attributable future medical expenses. The

14

District Court only found that Ed's future medical expenses "are anticipated to be substantial."

We hold that the District Court's interpretation and application of the law was incorrect under § 40-4-204(2), MCA, in concluding that Ed's personal injury awards were precluded from consideration in Terri's counter-petition for a modification of child support. We remand this case to the District Court with instructions to make additional findings and conclusions concerning 1) Ed and Terri's financial resources, 2) Ed and Terri's annual gross income, 3) the children's expenses, and 4) Ed's actual and necessary financial needs including those associated with his medical care resulting from his blindness. We instruct the District Court to subtract Ed's actual and necessary needs including those associated with his medical care from his financial resources, and consider the remaining amount in determining a future child support modification under the enumerated standards of § 40-4-204(2), MCA.

We wish to note that this opinion does not affect the federal tax exemption allowed to Ed concerning his personal injury awards.

IV

Should Terri be awarded attorney fees and costs incurred in responding to Ed's petition for modification, and further, should she be awarded attorney fees and costs of appeal?

15

Terri argues that the District Court abused its discretion when it did not award her attorney fees and costs because evidence established the following: 1) Terri voluntarily traveled to Montana from Oregon to respond to Ed's petition, 2) she borrowed money from her new employer to do so, 3) her financial resources are limited, and 4) Ed's financial resources are substantial, and he can easily afford to pay for Terri's attorney fees and costs. Terri further argues that based on the same, this Court should award her attorney fees and costs of appeal.

Ed argues that the District Court did not abuse its discretion when it refused to award Terri's attorney fees and costs because 1) the divorce decree did not provide for such an award, 2) Terri, in her cross-petition, raised additional issues outside of Ed's petition for the court's consideration, and 3) the record sufficiently supports the District Court's conclusion that both parties should pay their own attorney fees and costs. Ed further argues that based on the same, this Court should deny Terri an award of attorney fees and costs of appeal.

The District Court made the following findings pertinent to this issue:

> The Court finds from the pleadings and the exhibits on file herein that there were numerous and substantial issues to be resolved by these parties. Terri Durbin filed pleadings in attempts at modification in the State of Oregon without authority and without jurisdiction in the State of Oregon and made attempts to require Ed Durbin to appear in Oregon for purposes of answering

16

those claims. Mr. Durbin was required to hire the services of counsel in the State of Oregon as well as in the State of Montana to respond to those pleadings. Basically crossing in the mails was the petition of Ed attempting to clarify the issues concerning modification of child support and the visitation and custody matters. The Court finds that both of the petitions by the parties were filed in good faith for purposes of resolving issues that these parties have been unable to resolve in the past. Further, the Court finds that the visitation provisions now in effect pursuant to the decree required that the children return to Montana on or about the 15th day of June anyway. By having this matter on the 24th day of June, 1990, it was convenient or as convenient as possible for all parties involved. As a result, the Court specifically finds that neither side is entitled to reasonable attorney fees and/or Court costs and each must pay his and her own.

Section 40-4-110, MCA, provides that the court may award attorney fees and court costs "after considering the financial resources of both parties." Additionally, the person requesting attorney fees and court costs must make a showing of necessity. In Re the Marriage of Knudson (1980), 186 Mont. 8, 16-17, 606 P.2d 130, 135. We hold that the District Court failed to make adequate findings regarding Terri and Ed's financial resources when it concluded that each party should pay for his or her respective attorney fees and court costs. We therefore remand this case to the District Court for findings consistent with the rest of this opinion regarding Terri and Ed's financial resources. On remand, we wish to note that the District Court may still consider whether the parties should pay their respective attorney fees.

17

## V

Did the District Court improperly allow Ed to claim a tax deduction for Aaron while not ordering him to pay any child support?

On remand, the District Court shall also consider the proper allocation of income tax deductions for the dependent children and allocate the deductions in conformity with the court's findings and conclusions on child support, as well as the applicable tax law.

This case is reversed and remanded to the District Court for further proceedings consistent with this opinion.

_____
Chief Justice

We concur:

_____

_____

_____

_____

_____

_____
Justices

18

Justice Terry N. Trieweiler concurring in part and dissenting in part.

I concur in the result achieved by that part of the majority opinion which remands this case to the District Court for consideration of Ed's personal injury award in relation to his child support obligation. However, I do not agree with all that is said in that part of the majority's opinion.

Specifically, I disagree with the majority's conclusion that because Ed's award serves in part to replace the income he can no longer earn, his financial condition has somehow changed. If his personal injury award replaces prior income, then as far as the record discloses, it replaces the same income upon which his prior child support obligation was based, and nothing has changed.

I concur in the result achieved by the majority because under the facts presented in this case it is an equitable result and I can find no authority to the contrary. The majority result is consistent with treatment of personal injury awards by other jurisdictions. *See Fabiano v. Fabiano* (Conn. App. Ct. 1987), 523 A.2d 937; *Sommer v. Sommer* (Wis. Ct. App. 1982), 323 N.W.2d 144.

However, I agree with the rationale of the District Court when it concluded that Ed's circumstances had not really changed as a result of his personal injury award, but that he had simply replaced certain assets (his eye sight and earning capacity) with other assets (money).

19

Furthermore, I am concerned that under different circumstances the precedent established by this case could prove to be inequitable to personal injury victims. Therefore, I believe it is difficult to establish any consistent rule about the relationship of personal injury settlements and child support obligations. I agree with the Wisconsin Court of Appeals that each case must be evaluated separately and that:

> [W]hether a personal injury recovery does indeed improve a victim's economic condition for child support purposes will not always be easy or obvious. There are times, of course, when the victim has suffered actual economic impairment as a result of the tort-feasor's negligence, and the award is merely repaying the victim for the actual economic impairment. If so, the award may truly make the victim economically whole again and nothing more; no increase in economic circumstances results. These questions of fact must be carefully considered by the trial court in order to do justice to both the noncustodial parent and to the children.

*Sommer*, 323 N.W.2d at 147.

I dissent from that part of the majority opinion which concludes that there need be a modification of the original decree before social security benefits can be credited toward a parent's child support obligations. The social security benefits paid to Ed's children in this case were a direct result of his disability and inability to work. They are clearly a substitute for his loss of earning power and his obligation to support his children. There is no reason apparent to me why a disabled parent should be required to incur the additional expense of attorney fees to go

through the formality of modifying a decree simply to reflect what in reality is already the situation.

I do not agree that § 40-4-208, MCA, requires the majority's conclusion. That section only pertains to modification of child support payments. In the case of social security payments, the parent is simply substituting one source of payment for another.

Furthermore, the result achieved by the majority is particularly harsh where the Court concedes that after modification of the decree it would be appropriate to credit social security payments to child support obligations, but disallows a credit for those same payments for a nearly three year period of time prior to the motion to modify. I believe that the majority's opinion exalts form over substance and creates an unnecessary hardship for this totally disabled parent.

_____
Justice

21