No. 92-320

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

IN RE THE MARRIAGE OF

DONNA MARIE (HOLTHUSEN) JAKOBSON

    Petitioner-Appellant,

and

EARNEST DONALD HOLTHUSEN, and
MONTANA DEPARTMENT OF SOCIAL AND
REHABILITATION SERVICES,

    Respondent-Respondent.

APPEAL FROM:    District Court of the Fourth Judicial District,
                In and for the County of Missoula,
                The Honorable Ed McLean, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Donna M. Jakobson, Missoula, Montana (pro se)

    For Respondent:

        John McRae, Child Support Enforcement, Missoula,
        Montana

FILED

Filed:    JUN 10 1993

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:  December 22, 1992

Decided:  June 10, 1993

Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

This is an appeal from a Fourth Judicial District Court, Missoula County, order on child support issues in a dissolution action. We affirm.

There are three issues before the Court:

1. Did the trial court err when it denied Ms. Jakobson's motion to exclude the Child Support Enforcement Division (CSED) from the present action?

2. Did the trial court err when it applied social security disability payments as a credit toward child support?

3. Did the trial court err when it denied Ms. Jakobson's motion to order the CSED to return child support payments made by Earnest to the CSED?

Donna and Earnest Holthusen were divorced in 1980. Two daughters, Janna K. and Jacque E. Holthusen, were born during the marriage. Donna was awarded custody of the two girls in the dissolution decree and Earnest was granted reasonable visitation rights. Donna was awarded child support from Earnest of $150 per month per child. There have been problems between Donna and Earnest for years over the issue of child support. Donna was on public assistance - Aid to Families with Dependent Children (AFDC) - from 1978 to 1988.

All issues involve questions of law and "[o]ur standard of review for conclusions of law of a trial court is whether the District Court correctly interpreted the law." In Re Marriage of Durbin (1991), 251 Mont. 51, 55, 823 P.2d 243, 245.

First, Donna argues that the CSED should not be involved in this case because she did not request their assistance and she wants them excluded. CSED argues that before the March 25, 1992 hearing, Earnest requested the services of CSED and therefore, the CSED is properly involved in the case. We agree with CSED.

Mr. Holthusen applied for CSED's services after the January 22, 1992 hearing but before the March 25, 1992 hearing. Section 40-5-203(1), MCA, states that "[t]he department may accept applications for child support enforcement services on behalf of persons who are not recipients of public assistance and may take appropriate action to establish or enforce support obligations...." 45 C.F.R. § 303.2, states that "[t]he IV-D agency must: . . . (b) . . . within no more than 20 calendar days of receipt of referral of a case or filing of an application for services under § 302.33, open a case by establishing a case record...." Under 45 C.F.R. § 303.4, "...the IV-D Agency must: (b) [u]tilize appropriate State statutes and legal processes in establishing the support obligation pursuant to § 302.50 of this chapter....(c) [p]eriodically review and adjust child support orders, as appropriate, in accordance with § 303.8." (Emphasis added.)

It is clear that Earnest Holthusen can request CSED's assistance and thereafter, CSED becomes a real party in interest. Section 40-5-202(4), MCA. The District Court did not err in determining that the CSED should not be excluded from the present action.

3

Second, Donna argues that the trial court retroactively modified child support by crediting Earnest with Social Security payments dating back to January 22, 1992. The CSED claimed that under In Re Marriage of Durbin (1991), 251 Mont. 51, 57, 823 P.2d 243, 247, Earnest's Social Security payments to the children were properly credited toward child support owed from January 22, 1992. CSED contends that the issue of modification of child support due to the Social Security payments was before the trial court at that time and therefore, the application was not retroactive.

This Court concludes that Earnest's Social Security payments should be credited toward his child support obligation from January 22, 1992. On December 6, 1991, Earnest Holthusen sent an affidavit to the trial court requesting that the Social Security benefits his daughters receive be recognized as child support. In the trial court's order of February 18, 1992, paragraphs 1, 4 and 5 read:

1. The Order of child support is amended as follows:

(1) The State of Montana, Child Support Enforcement Bureau shall determine the appropriate current child support obligation of the Respondent. That determination, including determinations pertaining to interest on the accrued child support arrearage, upon submission, shall become the Order of the Court;

(2) The parties shall arrange for and attend the necessary appointments to obtain the determination specified in 1) above, . . .

. . .

4. For final resolution of this matter, unless good cause is shown by the child support enforcement bureau, the monthly obligation of the Respondent shall not exceed the maximum receivable from Respondent's Social Security Disability check - at this time 426.20.

4

5. The child support obligation of the Respondent shall be enforced by payment of his obligation from the Social Security Administration from his Social Security Disability Check directly to the Child Support Enforcement Bureau, who in turn will make proper remittance to Petitioner.

We agree with the CSED's assessment that modification of the child support order is one objective of this order. During the March 25, 1992 hearing, the trial court concluded that Earnest Holthusen was to be credited for his Social Security payments toward his child support obligation from January 22, 1992 and forward. He stated during the hearing that:

> Mr Holthusen has continually raised objection that he was not getting any credit for Social Security, and to listen to the Petitioner's argument, he has to raise that argument each and every time he is drug into court. I don't agree with that position. I think he has raised the argument sufficient times that it is before the Court at the present time, and the previous Order of this Court denying the credit for Social Security payments to the children is modified to the extent that he shall be given credit for them from this date forward.
> Now, Durbin was decided, I believe, on December 10th—December 19, 1991. In January '92, I believe—in February of 1992, I stated the monthly obligation of the Respondent shall not exceed the maximum receivable from Respondent's Social Security Disability check. At that time it was in the amount of the four hundred twenty-six dollars and twenty cents

> *   *   *   *   *   *

> Apply that to January 22nd of '92. That is when we should have been following Durbin, and I wasn't following Durbin.

Clearly, the trial court had notice that Earnest wished a modification of the child support to reflect the Social Security payments made to the two children. The trial court did not retroactively apply Durbin.

5

Third, Donna argues that the CSED should return payments made by Earnest to CSED which Donna contends belong rightfully to her. Donna Jakobson collected $20,067 in AFDC assistance from May of 1978 through November of 1988. At this time, there was a District Court Order for Earnest to pay child support. During the period of May of 1978 through November of 1988, Earnest should have paid $18,744 in child support. CSED contends that the State is entitled to the $18,744 owed in past child support because the money was assigned to the State by Donna as part of her application for AFDC public assistance.

Section 53-2-613, MCA, states:

**Application for assistance -- assignment of support rights.** (1) Applications for public assistance, including but not limited to aid to families with dependent children and medical assistance, must be made to the county department of public welfare in the county in which the person is residing. The application shall be submitted, the manner and form prescribed by the department of social and rehabilitation services, and shall contain information required by the department of social and rehabilitation services.

(2) A person by signing an application for public assistance assigns to the state, the department of social and rehabilitation services, and to the county welfare department all rights the applicant may have to support and medical payments from any other person in his own behalf or in behalf of any other family member for whom application is made.

(3) The assignment:

(a) is effective for both current and accrued support and medical obligations;

(b) takes effect upon a determination that the applicant is eligible for public assistance;

(c) remains in effect with respect to the amount of any unpaid support and medical obligation accrued under the assignment that was owed prior to the termination of public assistance to a recipient.

(4) Whenever a support obligation is assigned to the department of social and rehabilitation services pursuant

6

to this section, the following provisions apply:

(a) If such support obligation is based upon a judgment or decree or an order of a court of competent jurisdiction, the department may retain assigned support amounts in an amount sufficient to reimburse public assistance money expended.

When Donna applied for public assistance benefits, she signed a "Notice of Automatic Assignment of Rights" form, dated September 25, 1988, which states that "[b]y signing an application for public assistance you have automatically assigned and transferred all rights to child support to the State of Montana, Department of Social and Rehabilitative Services (SRS), and the County Welfare Department/County Office of Human Services."

Also, Section 40-5-202(8), MCA, states that:

(8) If public assistance is being or has been paid, the department is subrogated to the debt created by a support order and any money judgment is considered to be in favor of the department. This subrogation is an addition to any assignment made under 53-2-613 and applies to the lesser of:
(a) the amount of public assistance paid; or
(b) the amount due under the support order.

The February 18, 1992 order states that unless good cause is shown by the CSED, Earnest's monthly obligation would not exceed $426.20 and included in that obligation would be $75 which would be applied to his child support arrearage. The current support obligation is $360 per month. The CSED is retaining the money in excess of the current child support obligation to reimburse the State for the AFDC public assistance monies received by Donna from 1978 to 1988. Dave Thorson, of the CSED, testified that "as we receive them, the initial amount of money goes to current support,

7

and any excess that is not included in the current responsibility goes to pay the State's arrears next." Once the State's arrears are paid, any excess money would be sent to Donna. The money is being distributed correctly.

AFFIRMED.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices

June 10, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


Donna M. Jakobson
511 Eddy Ave.
Missoula, MT  59801


John McRae, Esq.
Dept. of Social & Rehabilitation Services
2501 Catlin, Ste. 208
Missoula, MT  59801

Earnest Holthusen
P.O. Box 7211
229 Meadow Place S.E.
Everett, WA  98201


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
    Deputy