No. 96-079

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

IN RE THE MARRIAGE OF

CAROL S. MILNER-BRINDLEY,

      Petitioner and Respondent,

  and

RICHARD A. BRINDLEY,

      Respondent and Appellant.

FILED

DEC 10 1996

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Dorothy McCarter, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

          R. Clifton Caughron, Caughron & Associates,
Helena, Montana

      For Respondent:

          Iris A. Basta and John Grant, Jackson, Murdo,
Grant & McFarland, Helena, Montana

Submitted on Briefs:  November 7, 1996

Decided:  December 10, 1996

Filed:

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1995 Internal Operating Rules, the following decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to State Reporter Publishing and West Publishing Companies.

Richard A. Brindley (Richard) and Carol S. Milner-Brindley (Carol) were divorced on January 18, 1996. Richard appeals from the findings, conclusions, and decree of dissolution entered by the First Judicial District Court, Lewis and Clark County. We affirm.

BACKGROUND

Richard and Carol were married on February 14, 1988. Christopher Brindley (Christopher), currently seven years old, is the only child born of the marriage. Carol holds a Ph.D. in psychology and is employed by the Department of Veterans Affairs, earning $57,000 annually. She also works as a consultant and is an officer in the Naval Reserve, receiving additional income of $7,561 per year. Richard is disabled and unemployed. He receives a VA medical retirement of $227 per month and Social Security benefits of $596 per month. He also receives Christopher's monthly Social Security dependent allowance of $296.

On July 26, 1994, Carol filed a petition for dissolution of marriage. Following mediation, the parties entered into a property settlement and maintenance agreement (Property Agreement), which provided Richard with $25,000 cash, $4800 for maintenance, and paid his attorney fees. The court found the Property Agreement to be

2

fair and equitable and incorporated its provisions into the dissolution decree. The parties also agreed on custody and visitation in a Memorandum of Understanding (MOU), which gives the parties joint custody of Christopher, with Christopher to spend 60 percent of his time with Carol and 40 percent with Richard. The court found the MOU to be in the child's best interests and incorporated its provisions into the dissolution decree.

The only issue presented at the dissolution proceeding was the determination of child support. The court found, based on the MOU, that Christopher will reside with Carol 60 percent of the time, or 219 days, and with Richard 40 percent of the time, or 146 days. Based on the Montana Child Support Guidelines (Guidelines), the court also found that Richard owed $38 per month in child support, which it waived. Instead, it found that 60 percent of Christopher's $296 Social Security dependent allowance, or $177.60, should be substituted for Richard's child support obligation. The court based its calculations on Carol's annual gross income of $64,561 and Richard's income of $10,020. The court did not consider the parties' assets because it found the property division to be fair and equitable.

Richard appeals from the District Court's findings of fact, conclusions of law, and decree of dissolution. He argues that the court erred and abused its discretion when calculating child support because it failed to apply the relevant administrative rules when determining the number of days he should be credited for

3

child support and improperly calculated Carol's federal income taxes and day care costs.

Richard also argues that the court misapplied the holding of In Re Marriage of Durbin (1991), 251 Mont. 51, 823 P.2d 243, by awarding 60 percent of Christopher's Social Security dependent allowance to Carol as a substitute for child support. He further claims that the court's child support calculation is unconscionable because it fails to maintain Christopher's standard of living and nearly lowers Richard's income below the federal poverty index. Richard also requests attorney fees, costs of appeal, and a retroactive award of child support and Social Security benefits.

Richard claims that the District Court failed to consider the visitation schedule contained in the MOU when it calculated the number of days that he and Carol should be credited for child support. Richard argues that the court should have determined the number of hours that he and Carol spend daily with Christopher. Richard claims that he spends a majority of the year with Christopher (between 184-192 days), thus entitling him to a recalculation of child support and primary custodian status. Carol argues that the court took judicial notice of the 60-40 percent custody arrangement provided for in the MOU, which contains all of the details necessary to calculate the number of days of custody for child support.

The standard of review of a district court's award of child support is whether the district court abused its discretion. In Re Marriage of Craib (1994), 266 Mont. 483, 490, 880 P.2d 1379, 1384.

4

Rule 46.30.1535(5)(a)(i), ARM, defines a day as "when a parent has physical control of a child for the majority of a 24 hour calendar day." The arguments that Richard presents on the number of hours that he will spend with Christopher are speculative, and his proposed definition of "day" differs from the definition contained in the Guidelines. Richard attempts to count the time that Christopher spends in school as a "day," yet provides no case law or administrative rule to support his argument.

The MOU allocates custody to Carol 60 percent of the time and to Richard 40 percent of the time. The provisions contained in the MOU are substantial credible evidence to support the District Court's finding that Richard has annual custody of Christopher for 146 days and Carol has custody for 219 days. The District Court did not abuse its discretion when it calculated Richard's child support obligation based on the 60-40 percent custody arrangement contained in the MOU.

Richard claims, without citing legal authority, that the District Court abused its discretion in calculating child support when it failed to adjust Carol's tax liabilities to account for the fact that she intends to file as an unmarried head of household and itemize her deductions. He supports his argument by providing pro forma income tax forms of Carol's taxes and suggests that the District Court could take judicial notice of the Tax Code and seek assistance from a tax professional.

In Fronk v. Wilson (1991), 250 Mont. 291, 819 P.2d 1275, the wife argued that the court erred by allowing her husband a tax

5

deduction when it calculated child support. This Court found no error, holding that a district court is in the best position to determine whether tax returns accurately reflect disposable income. Fronk, 819 P.2d at 1279.

There is no record that the pro forma tax returns submitted by Richard were ever admitted by the District Court. Due to the speculative nature of these returns and because the District Court is in a better position to determine Carol's disposable income, we conclude that the court did not abuse its discretion when it calculated Carol's income taxes to determine her child support obligations.

We also note that Richard provides no legal authority interpreting the Guidelines which would render the District Court's application of the law as an abuse of its discretion. An appellant carries the burden of establishing error by the trial court. Moreover, Rule 23, M.R.App.P., requires the appellant to cite to authority which supports the position being advanced on appeal. Richard repeatedly has failed to do so.

Richard also argues that the court erred when it credited Carol with year-round day care expenses because Christopher will not require day care when he is in Richard's custody or when Carol is on vacation. Richard suggests that he is willing, and should be able, to provide free day care to Christopher rather than being required to pay for it as a portion of his child support. Richard's arguments ignore the express provisions of the MOU, agreed upon by both parties with advice from counsel, which

6

provides, "At Carol's discretion, her residency may include time at a day care of her choice. . . . "

Rule 46.30.1525(1)(a)(i), ARM, states that child care costs may be based on annualized, average costs of receipted expenses. Carol testified, and her financial affidavit indicated, that her day care costs equal $250 per month. There was substantial evidence presented at the dissolution proceeding to support the court's finding that Carol was entitled to a $210 credit for day care expenses. The court did not abuse its discretion when it credited Carol for day care expenses.

Richard argues the court failed to consider the value of non-income-producing assets when it calculated child support. However, at the same time, he also claims that his assets should not be subject to the same calculation. When the District Court determined Richard's and Carol's child support obligations according to the Guidelines, it specifically found that it had not considered the net value of the parties' assets because it found the marital property division to be fair and equitable. The court asked Richard if he believed the property had been equitably divided. Richard's counsel agreed that it had.

We decline to review an issue that Richard initially agreed upon during the dissolution proceeding and which is raised for the first time on appeal. In Re Marriage of Mager (1990), 241 Mont. 78, 81, 785 P.2d 198, 200-01. We affirm the District Court's award of child support in all respects.

Richard further argues that the court erred and abused its discretion when it relied on Durbin, 823 P.2d at 243, and awarded Carol 60 percent of Christopher's Social Security dependent allowance as a substitute for Richard's child support obligation. In Durbin, the mother, primary custodian of two children, received Social Security benefits on behalf of her children due to their father's disability. We held that the Social Security benefits should be treated as a contribution from the father toward the support of his children and serve as a credit toward the father's child support obligation. Durbin, 823 P.2d at 247.

Richard argues that Durbin does not apply to this case because he, not Carol, receives Christopher's Social Security benefits which enable him to provide basic living needs for his son. A closer analysis of Durbin proves Richard's argument incorrect. In Durbin, the amount of Social Security benefits received by the mother exceeded the amount of child support the father was required to pay under the Guidelines. Durbin, 823 P.2d at 244-45. Likewise, Christopher's $296 allowance exceeds Richard's $38 child support obligation calculated under the Guidelines. The District Court did not err when it allocated 60 percent of Christopher's $296 Social Security allowance to Carol.

Richard also claims that the court erred when it failed to recognize the disparity in the parties' financial resources when it declined to deviate from the Guidelines. He claims that the court's child support determination places him below the federal poverty level.

8

In his initial brief, Richard states that the federal poverty level for a single person under age 65 with one child is $10,504 per year. Richard also admits that his total resources amount to $11,441 per year. By Richard's own admission, the District Court's child support calculations do not place him below the federal poverty level.

Richard also argues that the court's child support calculations will reduce Christopher's standard of living to that of poverty during the time he spends with Richard. Richard then urges this Court to modify his child support obligation by reason of the financial inequities between the parties. He cites In Re Marriage of Hall (1990), 244 Mont. 428, 798 P.2d 117, in support of his argument. In Hall, we stated that a court is not bound to apply the Guidelines if the court finds by clear and convincing evidence that so doing would have an unjust result on the parties. Hall, 798 P.2d at 121.

The facts of Hall differ from Richard's situation. In Hall, the court considered a father's children from a subsequent marriage when determining his increase in child support. That is not the situation here. We decline to extend the holding of Hall to Richard's situation. The District Court's substitution of a percentage of Christopher's Social Security benefits in lieu of Richard's child support obligation will not have an unjust result on the parties.

We also note that Christopher's Social Security allowance belongs to Christopher, not to Richard or Carol. Regardless of

9

which parent receives the allowance, its proceeds benefit Christopher. The District Court's 60-40 percent distribution of the allowance will not affect Christopher's standard of living.

Richard also requests an award of attorney fees, costs of appeal, and a retroactive award of child support and Social Security. Because Richard has not shown an abuse of discretion in the child support calculation, we decline to award Richard retroactive child support or Social Security benefits.

Richard contends that he should be awarded attorney fees and costs of appeal because he is without assets to pay for an appeal. Richard's argument is without merit. The Property Agreement signed by Richard and Carol states, in part:

> Each party hereto further releases and forever discharges the other party . . . and Richard's attorney, R. Clifton Caughron, for himself, hereby specifically and fully releases and forever discharges Carol . . . for payment of any and all attorney's fees which the named attorney claimed or which he might claim now or in the future on account of this action . . . .

The Property Agreement provided Richard with compensation for his attorney fees associated with this action. The District Court approved the attorney fee agreement. We hold that the District Court correctly required Richard to pay his own attorney fees.

Affirmed, with each party to pay their own costs of appeal.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

11

December 10, 1996

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

R. Clifton Caughron
Caughron & Associates
P.O. Box 531
Helena, MT 59624-0531

Iris A. Basta, John Grant
Jackson, Murdo, Grant & McFarland
203 N. Ewing St.
Helena, MT 59601

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy