Ona Mae REED; Sallie Long; Ruth Wilcher; Opal Mae Cook; Stella King, and all others similarly situated, Appellees,

v.

**HEALTH AND HUMAN SERVICES, Appellant,**

and

**William L. Lukhard, Commissioner of the Virginia Department of Welfare, Defendant.**

Ona Mae REED; Sallie Long; Ruth Wilcher; Opal Mae Cook; Stella King, and all others similarly situated, Appellees,

v.

**HEALTH AND HUMAN SERVICES, Defendant,**

and

**William L. Lukhard, Commissioner of the Virginia Department of Welfare, Appellant.**

Ona Mae REED; Sallie Long; Ruth Wilcher; Opal Mae Cook; Stella King, and all others similarly situated, Appellants,

v.

**DEPARTMENT OF HEALTH AND HUMAN SERVICES, William L. Lukhard, Commissioner of the Virginia Department of Welfare, Appellees.**

Nos. 84–2167, 84–2168 and 84–2187.

United States Court of Appeals, Fourth Circuit.

Argued May 6, 1985.

Decided Oct. 10, 1985.

---

Jill Hanken, Richmond, Va. (Virginia Poverty Law Center, Claire Curry, Charlottesville-Albemarle Legal Aid Society, Charlottesville, Va., Martin Wegbreit, Client Centered Legal Services of Southwest Virginia, Inc., Castlewood, Va., Holly Peters, Legal Aid Society of Roanoke Valley, Roanoke, Va., John Saxon, Virginia Legal Aid Society, Danville, Va., on brief), for appellants.

Charlotte Hardnett, Asst. Regional Atty., Washington, D.C., Thomas J. Czelusta, Asst. Atty. Gen., Verona, Va. (Gerald L. Baliles, Atty. Gen., John A. Rupp, Sr. Asst. Atty. Gen., Richmond, Va., John P. Alderman, U.S. Atty., Roanoke, Va., Beverly Dennis, III, Regional Attorney, Philadelphia, Pa., on brief), for appellee.

Before WIDENER and PHILLIPS, Circuit Judges, and WARD, United States Dis-

trict Judge for the Middle District of North Carolina, sitting by designation.

JAMES DICKSON PHILLIPS, Circuit Judge:

This case is before us on cross-appeals from an order of the district court, 591 F.Supp. 1247 (D.C.Va.1984), enjoining the state defendant William Lukhard, Commissioner of the Virginia Department of Welfare, from treating compensation derived from personal injuries as income for the purposes of determining eligibility for Aid to Families with Dependent Children (AFDC) benefits but denying the class of plaintiffs an award of retroactive benefits withheld under Virginia's application of the "lump sum rule" set out in 42 U.S.C. § 602(a)(17) and 45 C.F.R. § 233.-20(a)(3)(ii)(D). The Department of Health and Human Services and Lukhard appeal the grant of summary judgment to plaintiffs that personal injury awards are not to be considered as income under the lump sum rule. The plaintiffs cross-appeal the district court's denial of retroactive benefits, its refusal to rule on a petition for attorneys fees, and the form of notice ordered to members of the class. We affirm the order of the district court in all respects.

## I

The AFDC program is a cooperative federal-state assistance program established by Congress in the Social Security Act, 49 Stat. 627, codified at 42 U.S.C. §§ 601–615. The program is administered at the state level by agencies such as the state defendant in the case at bar. The state agency develops a plan which must be approved by the federal defendant HHS. The federal government then reimburses the state for a percentage of the benefits paid and the administrative costs incurred. One element of the plan is the establishment of eligibility for benefits based on need.

In determining an applicant's eligibility the administrative agency distinguishes between income and resources. Some resources, such as a home or an automobile may be totally or partially exempt from consideration in determining an applicant's need for benefits. *See* 45 C.F.R. § 233.-20(a)(3)(i). Cash may be considered as a resource in some instances and may be included in the $600 maximum of non-exempt resources which are not considered in determining eligibility in Virginia. The distinction is important because all income is considered in the eligibility assessment.

Before 1981, lump sums of money from whatever source were treated as income in the month of receipt and as a resource in succeeding months. Congress changed that treatment with the passage of the "lump sum rule" as part of the Omnibus Budget Reconciliation Act of 1981, 95 Stat. 357 (1981), pertinent provision codified at 42 U.S.C. § 602(a)(17). The lump sum rule provides that lump sum income is to be considered in determining eligibility for a number of months calculated by dividing the amount of the lump sum income by the state's monthly standard of need. Thus, if the state's standard is $300 per month, a $15,000 payment would render the applicant ineligible for 50 months. *See* 45 C.F.R. § 233.20(a)(3)(ii)(D).[1]

---

1. 45 C.F.R. § 233.20(a)(3)(ii)(D) (1983) states as follows:

Net income, except as provided in paragraph (a)(3)(xiii) of this section, and resources available for current use shall be considered; income and resources are considered available both when actually available and when the applicant or recipient has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance. When the AFDC assistance unit's income, after applying applicable disregards, exceeds the State need standard for the family because of receipt of non-recurring

lump sum income, the family will be ineligible for aid for the full number of months derived by dividing the sum of the lump sum income and other income by the monthly need standard for a family of that size. Any income remaining from this calculation is income in the first month following the period of ineligibility. The period of ineligibility shall begin with the month of receipt of the non-recurring income or, at State option, as late as the corresponding payment month. For purposes of applying the lump sum provision, family includes the AFDC assistance unit and any other individual whose lump sum

Virginia initially implemented the rule by considering lump sums from any unearned source, including insurance settlements, as lump sum income. Joint Appendix at 143. The Virginia regulation was subsequently amended to provide that money derived from the conversion of an exempted resource into cash was not to be treated as lump sum income. Joint Appendix at 37. A later amendment broadened the regulation's scope to conversion of any real or personal property, whether an exempt resource or not, into cash. Joint Appendix 27–30, 37. Thus, a payment under a fire insurance policy covering a recipient's home or personal property would be considered a resource, rather than lump sum income, and would not affect the recipient's eligibility once the cash had dissipated below the allowable resource level. A settlement or damage award from personal injury, however, continued to be treated as lump sum income.

This action brought under 42 U.S.C. § 1983 and 5 U.S.C. § 701, was filed by three named plaintiffs in June 1983 to challenge the treatment of personal injury awards as lump sum income.[2] The district court granted the plaintiffs a preliminary injunction prohibiting further application of the lump sum rule against them. In December 1983 two more plaintiffs were allowed to intervene, and the injunction was extended to grant them relief.

On the merits of the case, the district court granted the plaintiffs' motion for summary judgment, holding that the treatment of personal injury awards as lump sum income was unreasonable. It certified the action as a class action under Rule 23 of the Federal Rules of Civil Procedure and ordered further proceedings to determine appropriate relief. The federal defendant appealed.

After an evidentiary hearing, the district court entered a permanent injunction against treating compensation for personal injury as lump sum income and ordered the defendants to pay current benefits to named plaintiffs and to members of the class, but denied plaintiffs' request for retroactive payment of benefits. The district court ordered that notice of the decision be given to members of the class.[3] All relief except payment of current benefits to the named plaintiffs was stayed pending appeal, and the court made no ruling on plaintiffs' petition for attorneys fees and costs. These appeals followed.

## II

■ We affirm the grant of summary judgment to the plaintiffs on the primary question whether personal injury awards are "income" for the purpose of applying the "lump sum" rule set forth in 42 U.S.C. § 602(a)(17). The facts in this case were

---

income is counted in determining the period of ineligibility. A State may shorten the period of ineligibility where it finds that a life-threatening circumstance exists, and the non-recurring income causing the period of ineligibility has been or will be expended in connection with the life-threatening circumstance. Further, until that time the non-recurring income must have been used to meet essential needs and currently the assistance unit must have no other income or resources sufficient to meet the life-threatening circumstance.

**2.** The plaintiffs, Ona Mae Reed, Sallie Long, and Ruth Wilcher each received personal injury awards and were declared ineligible for benefits. Each alleged that her funds were spent on necessary living expenses and household items before the period of ineligibility ceased.

**3.** The court order provided in part as follows:

Defendant Lukhard will cause individual notice to be sent by mailing to the last known address of those persons listed on the computer. "snapshots" (one such "snapshot" taken in July, 1983, and one to be taken within fifteen (15) days of the entry of this order) whose benefits were denied or terminated due to personal injury awards. Said notice shall be approved by the court prior to mailing.

Defendant Lukhard will cause notice of this decision to be published once a week for four (4) weeks in no fewer than four (4) regional newspapers in Virginia, one of which must be the Richmond newspaper.

Defendant Lukhard will cause notice of this decision to be posted in each local office of the Virginia Department of Social Services and of the Virginia Department of Health. Said notice shall remain posted for a period of at least sixty (60) days.

Jt.App. 190–91.

not disputed, thus the case was before the district court on a question of law—the construction of the statute.

Neither the statute itself nor the implementing regulation defines "income." The starting point for construing the statute is therefore an examination of the ordinary meaning of the undefined term; "[w]here Congress uses terms that have accumulated settled meaning under either equity or the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms." *NLRB v. Amax Coal Co.*, 453 U.S. 322, 329, 101 S.Ct. 2789, 2794, 69 L.Ed.2d 672 (1981), *citing Perrin v. United States*, 444 U.S. 37, 42–43, 100 S.Ct. 311, 314–315, 62 L.Ed.2d 199 (1979). Taking that as its starting point, the district court held that personal injury awards would not be considered "income" as that term is ordinarily understood. *Reed v. Lukhard*, 591 F.Supp. 1247, 1256 (W.D.Va. 1984). Personal injury awards serve to make one whole, in effect restoring one to the status quo before the injury was suffered. *See Lilley v. Simmons*, 200 Va. 791, 108 S.E.2d 245 (1959); 22 Am.Jur.2d, Damages § 85 (1965). Income on the other hand represents a "gain or profit," 42 C.J.S. Income (1944), and is ordinarily understood to be a return on the investment of labor or capital, thereby increasing the wealth of the recipient. *See Blacks Law Dictionary* 687 (5th ed. 1979); *see also Eisner v. Macomber*, 252 U.S. 189, 207, 40 S.Ct. 189, 193, 64 L.Ed. 521 (1920).

The defendants argue that the district court erred in looking to contexts other than the AFDC program for a definition of income. We disagree. As we noted, the AFDC statute does not define income. While other statutes' definitions do not control our inquiry, it is instructive that Congress as well as the Department of Health and Human Services and other agencies have defined income in other contexts to exclude personal injury awards. *See* 26 U.S.C. § 104 (defining income for federal income tax purposes); 7 C.F.R. § 273.-9(c)(8) (Department of Agriculture Food Stamp Program); 48 Fed.Reg. 7010–11

(Feb. 17, 1983) (annual poverty guidelines promulgated by HHS). These definitions indicate the meaning that has come to be associated with income, and in light of the absence of a definition within the AFDC statute, we believe they give the best indication of the meaning intended by Congress in this context.

We do not lightly adopt an interpretation of the statute contrary to the interpretation advanced by the agency. Courts must give deference to the agency's interpretation of its own regulations; we may not reject the agency's interpretation simply because it is not the one we would reach. *See Udall v. Tallman*, 380 U.S. 1, 16–17, 85 S.Ct. 792, 801–802, 13 L.Ed.2d 616 (1965); *Fairfax Nursing Center v. Califano*, 590 F.2d 1297, 1301 (4th Cir.1979). Our review, however, cannot be so blind and uncritical as to become a rubberstamping of the agency's interpretation; "administrative interpretations of statutory terms are given important but not controlling significance." *Batterton v. Francis*, 432 U.S. 416, 424, 97 S.Ct. 2399, 2405, 53 L.Ed.2d 448 (1977); *see also Volkswagenwerk A.G. v. Federal Maritime Commission*, 390 U.S. 261, 272, 88 S.Ct. 929, 935, 19 L.Ed.2d 1090 (1968). In this case we reject the agency's interpretation because we believe it conflicts with Congress' intent and because its disparate treatment of personal injury awards is inequitable and thus contrary to HHS' own guidelines. *See* 45 C.F.R. § 233.10(a)(1).

The legislative history indicates that Congress was concerned that AFDC recipients were encouraged by the treatment of large sums of money as resources to spend the money quickly in order to remain eligible for benefits. By promulgating the lump sum rule, Congress hoped to encourage recipients to budget large sums to meet needs over a longer period of time, thereby easing the burden on the public fisc. *See* S.Rep. No. 97–139, 97th Cong., 1st Sess. 436, *reprinted at* 1981 U.S.Code Cong. & Ad.News 396, 702; *Bell v. Massinga*, 721 F.2d 131 (4th Cir.1983). However the legislative history did not indicate any intent to

redefine income. The committee report states:

> Under present law, any payments that meet the definition of income (e.g., retroactive social security benefits) are counted as income in the month of receipt and any of the payment that is not spent in that month is usually considered a resource in the months thereafter.
>
> The committee amendment would require that large payments, together with other income remaining after the application of disregards, be considered available to meet ongoing needs in the AFDC program.

1981 U.S.Code Cong. & Ad.News at 702. We believe that this language unmistakably reveals Congress' intent to reach only those payments in the OBRA lump sum rule which would ordinarily be considered income, not all large payments of money. *But see Walker v. Adams,* 741 F.2d 116 (6th Cir.1984). As the ordinary meaning of income does not in our view extend to personal injury awards, we find no legislative intent to extend the lump sum rule to such awards.

Nor do we believe that OBRA gave HHS the authority to allow states the option of treating personal injury awards differently than other payments for loss. Virginia treats a payment made pursuant to a casualty policy for loss of a home or a car as a resource but does not so treat a payment for loss incurred due to injury. The defendants assert that this treatment is consistent since the plaintiff may reduce the amount of the award treated as income by offsetting against it sums expended for medical care, legal fees, and other expenses caused by the injury prior to and 30 days after the money is received. Implicit in this assertion is the assumption that casualty loss payments will by necessity be used to replace the resource. We are not persuaded.

The effect of such treatment is to place a restriction on the injured recipient who cannot go into the market to replace his loss due to the nature of pain and suffering while the recipient who can go into the market to replace his lost resource, but chooses not to do so, is not so restricted. Moreover, the offset rule imports a time limitation into actual replacement of the loss due to injury that is not imposed on the replacement of other resources. Most important, this time limitation carries with it an element of arbitrariness since all the expenses due to personal injury may not accrue within the 30 days following receipt of the funds. Thus, actual replacement due to latent consequences of the injury and to permanent consequences requiring future expenditure simply falls outside the allowable offset period. This effect is inequitable and puts the injured recipient in an untenable position when compared to the recipient who has lost a more concrete and tangible resource. The AFDC program was designed to assist the needy; the state by imposing inequitable eligibility requirements thwarts that purpose and runs afoul of regulations aimed at ensuring fair and unarbitrary treatment. *See* 45 C.F.R. § 233.10(a)(1).

Therefore, we hold that the lump sum rule may not be applied to personal injury awards to render AFDC recipients ineligible for benefits. Accordingly, the judgment for the plaintiffs is affirmed.

### III

The plaintiffs appeal the judgment of the district court denying corrective payments of benefits which the plaintiffs would have been entitled to but for the application of the lump sum rule. The district court ruled that the eleventh amendment precluded such payments, citing *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (*Pennhurst II*). We agree and affirm.

*Pennhurst II* reaffirmed the holding of *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). In *Edelman,* the plaintiffs sought to enjoin officials from the Illinois Department of Public Aid from administering the federal-state Aid to the Aged, Blind, or Disabled program in a manner inconsistent with federal regulations and the fourteenth amendment. The

Supreme Court affirmed the injunction but held that retroactive payment of benefits was barred by the eleventh amendment. The Court stated:

> While the Court of Appeals described this retroactive award of monetary relief as a form of "equitable restitution," it is in practical effect indistinguishable in many aspects from an award of damages against the State. It will to a virtual certainty be paid from state funds, and not from the pockets of the individual state officials who were the defendants in the action. It is measured in terms of a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials.

*Edelman*, 415 U.S. at 668, 94 S.Ct. at 1358. The Court went on to hold that

> [t]hough a § 1983 action may be instituted by public aid recipients such as respondent, a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief, and may not include a retroactive award which requires the payment of funds from the state treasury.

*Id.* at 677, 94 S.Ct. at 1362 (citations omitted).

■ The appellees assert that their case differs from *Edelman*, despite the almost identical fact pattern, in that Congress has since enacted 42 U.S.C. § 602(a)(22) which requires that a state AFDC plan must provide that "the state agency will promptly take all necessary steps to correct any overpayment or underpayment of aid under the State plan." Underpayment is defined as "a financial assistance payment ... which is less than the amount for which the assistance unit was eligible, or failure by the State to issue a financial assistance payment for the payment month to an eligible assistance unit if such payment should have been issued." 45 C.F.R. § 233.-20(a)(13)(ii). Thus, assert appellees, the award of retroactive benefits is ancillary to the injunctive relief as prospective compliance with the federal statute and is therefore within the prospective compliance exception to the eleventh amendment bar. *See Milliken v. Bradley*, 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977).

The award of retroactive benefits sought here is distinguishable from the relief granted in *Milliken*. In *Milliken*, the Court ordered the defendants to implement remedial education programs as an adjunct to desegregating the Detroit public school system. The Supreme Court affirmed this relief, ruling that ordering the necessary expenditure of funds for the programs was within the federal courts' remedial powers since the expenditure was ancillary to the defendants' compliance in the future with the court's order to "conform their conduct to requirements of federal law." *Id.* at 289, 97 S.Ct. at 2762. In the case at bar the injunctive relief requires the defendants in the future to refrain from treating personal injury awards as income. Compliance with this order obviously will require further expenditures of state funds to make assistance payments that would not otherwise have been made. The retroactive benefits sought, however, cannot be seen as an adjunct of the court ordered prospective relief, but could only constitute redress for past violations of federal law. As such the award would be indistinguishable from damages. *Edelman* squarely holds that such relief is outside the remedial power of the federal courts.

## IV

We find no merit to plaintiffs' assertion that the district court erred in failing to order the mailing of individual explanatory notices of the judgment to all members of the plaintiff class. The district court ordered such notice to those members of the plaintiff class who could be ascertained from computer records maintained by the state defendants. As plaintiffs point out, the method of ascertaining ineligible recipients from the computer records would not reveal a substantial number of potential members of the class, particularly those who had been ineligible for a period of time prior to the present action but who had become eligible again before July 1983.

However, the district court also ordered publication of notice for four weeks in no less than four Virginia newspapers, including one in Richmond, and the posting of notice in all local offices of the Virginia Department of Social Services and the Virginia Department of Health.

■ The district court has wide discretion in fashioning the notice "best calculated to reach [the plaintiff class] without imposing an unreasonable burden on the state." *Fabula v. Buck,* 598 F.2d 869, 874 (4th Cir.1979); *see also Kimble v. Solomon,* 599 F.2d 599 (4th Cir.1979). The Supreme Court held in *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), that requiring individual notice does not violate the eleventh amendment, but of course did not require such notice to class members in all cases. We find no abuse of discretion in the form of notice ordered here as the mailing of notice to identifiable class members was supplemented by posted notice and publication.

### V

■ Lastly we find no merit to plaintiffs' contention that the district court erred in refusing to rule on their petition for attorneys fees. Though appellate review of such an award or denial of award may best be done on appeal of the merits of the case, *see Wright v. Jackson,* 522 F.2d 955 (4th Cir.1975), a district court may properly defer ruling pending ultimate resolution of the merits, hence determination of the prevailing party question. *See Anderson v. Morris,* 500 F.Supp. 1095 (D.Md.1980); *accord Dickerson v. Pritchard,* 551 F.Supp. 306 (W.D.Ark.1982), *aff'd,* 706 F.2d 256 (8th Cir.1983).

### VI

For the foregoing reasons, we find no error in the judgment of the district court and affirm it in all respects.

AFFIRMED.