DOLIA VILLANUEVA, n/k/a Dolia Garcia, Petitioner-Appellee, v. SEAN PATRICK O'GARA, Respondent-Appellant.

Second District   No. 2—95—1318

Opinion filed July 15, 1996.

148

Richard D. Schiller, of Richard D. Schiller, P.C., of Oswego, for appellant.

Brad M. Swearingen, of North Aurora, for appellee.

PRESIDING JUSTICE McLAREN delivered the opinion of the court:

The petitioner, Dolia Villanueva, brought an action to secure a one-time support payment on behalf of the parties' daughter from the respondent, Sean Patrick O'Gara, after he received a $251,655.36 lump sum settlement of his claim for personal injuries. The trial court determined that the respondent's settlement constituted income under the guidelines for child support (see 750 ILCS 5/505 (West 1994)) and ordered that 20%, or $50,331.07, of the settlement be deposited in trust for the benefit of the respondent's child. The respondent timely appeals. We reverse and remand.

The material facts presented are undisputed. The petitioner and respondent were never married, but on April 27, 1987, the petitioner gave birth to a girl, named Amanda. On May 11, 1989, the respondent was adjudged to be the father of that child in a paternity action and ordered to pay $50 per week to the petitioner for the support of the child.

The respondent injured his hand while at work approximately six years ago, from the date of this appeal, and subsequently considered bringing a product liability suit against an unidentified defendant. At the time of the injury, the respondent made $7.65 an hour as a foreman trainee. The respondent expected to make $12 an hour after his four-month training period expired. After his injury, the respondent returned to his same employer as a warehouse manager, making $10 per hour. However, his former employer allegedly harassed the respondent over the possible product liability suit, and the respondent quit. After he quit, the respondent drew workers'

compensation benefits and continued to pay $50 a week to the petitioner. The respondent and the unidentified defendant in the respondent's potential product liability suit agreed to settle the respondent's potential claims for a lump sum payment of $385,000. After attorney fees and costs of his suit, the respondent received net proceeds of $251,655.36.

On June 3, 1994, the petitioner filed a petition for increase in support, seeking a one-time lump sum payment of 20% of the respondent's net proceeds from the settlement. After a bench trial, the court agreed with the petitioner that the respondent's $251,655.36 proceeds from the settlement constituted "income" under the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/101 *et seq.* (West 1994)) and ordered that 20% of that amount, or $50,331.07, be deposited in trust. The trial court did *not* enter findings of fact as to an apportionment of damages between all the elements of damages recoverable in personal injury torts.

The respondent argues that the trial court erroneously found that his entire personal injury settlement constituted "income" for purposes of child support. We agree and note that this is an issue of first impression in this State.

■ The amount of child support being paid may be modified "upon a showing of a substantial change in circumstances." 750 ILCS 5/510(a) (West 1994). One such change may be increased net income of the person providing support. See *In re Marriage of Riegel*, 242 Ill. App. 3d 496, 498-99 (1993). The modification of child support lies within the discretion of the trial court. *In re Marriage of Bussey*, 108 Ill. 2d 286, 296 (1985). On review, a court will not disturb a trial court's modification of child support absent an abuse of that discretion. *Bussey*, 108 Ill. 2d at 296. Further, a trial court's findings regarding net income are also within the trial court's discretion and will not be reversed absent an abuse of discretion. *Blisset v. Blisset*, 123 Ill. 2d 161, 167 (1988); *In re Marriage of Scafuri*, 203 Ill. App. 3d 385, 390 (1990).

■ At the outset, we note that the Illinois Parentage Act of 1984 (Parentage Act) provides that the determination of any child support award for a child born to unmarried couples is governed by the guidelines set forth in the Act. 750 ILCS 45/14(a)(1) (West 1994); 750 ILCS 5/505 (West 1994). This court previously ascertained that "the parent of a child born out of wedlock whose paternity is established is liable for the child's support, maintenance, education, and welfare to the same extent and in the same manner as the parent of a child born in lawful wedlock." *Rawles v. Hartman*, 172 Ill. App. 3d 931, 934 (1988).

■ The Act defines "net income," for purposes of determining child support, as the total of all *income* from all sources, minus a list of specified deductions, none of which is applicable in the case at bar. 750 ILCS 5/505(a)(3) (West 1994); *In re Marriage of Pylawka*, 277 Ill. App. 3d 728, 732 (1996). We recognize that the Act and the Parentage Act define the term "income" for purposes of "[w]ithholding of [i]ncome to [s]ecure [p]ayment of [s]upport." 750 ILCS 5/706.1(A)(4) (West 1994); 750 ILCS 45/20(A)(4) (West 1994). However, we determine that said definition does not control the case at bar. *In re Marriage of Dodds*, 222 Ill. App. 3d 99, 101-02 (1991).　·

Consequently, "income," as contemplated by section 505(a)(3) of the Act (750 ILCS 5/505(a)(3) (West 1994)), is undefined in the statute. Thus, we must turn to the legislative intent. *First of America Bank v. Netsch*, 166 Ill. 2d 165, 181 (1995); *Moon v. Smith*, 276 Ill. App. 3d 958, 962 (1995). The best indicator of legislative intent is the language of the statute. *First of America Bank*, 166 Ill. 2d at 181; *Moon*, 276 Ill. App. 3d at 962. If the statutory language is clear, the court must give it effect without resorting to other aids of construction. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 479 (1994); *Moon*, 276 Ill. App. 3d at 962.

■ We determine that the clear terms of the Act (750 ILCS 5/101 *et seq.* (West 1994)) do not consider *entire* settlements from personal injury claims as included in the definition of "net income" for purposes of determining the amount of child support. 750 ILCS 5/505(a)(3) (West 1994). "Net income," for purposes of determining the amount of child support, is defined as "the total of all *income* from all sources." (Emphasis added.) 750 ILCS 5/505(a)(3) (West 1994). "Income" represents a "gain or profit" (42 C.J.S. *Income* (1944)) and is "ordinarily understood to be a return on the investment of labor or capital, thereby increasing the wealth of the recipient" (*Reed v. Health & Human Services*, 774 F.2d 1270, 1274 (4th Cir. 1985), *rev'd on other grounds sub nom. Lukhard v. Reed*, 481 U.S. 368, 95 L. Ed. 2d 328, 107 S. Ct. 1807 (1987); see also *Eisner v. Macomber*, 252 U.S. 189, 207, 64 L. Ed. 521, 529, 40 S. Ct. 189, 193 (1920); Black's Law Dictionary 763 (6th ed. 1990)). By contrast, it is clear that personal injury awards serve to make an injured party whole, in effect restoring one to the status quo before the injury was suffered. *Northern Illinois Gas Co. v. Vincent DiVito Construction*, 214 Ill. App. 3d 203, 214-15 (1991); *Reed*, 774 F.2d at 1274. Compensatory damages are not granted to enable an injured party to make a profit or a windfall on the transaction. *Northern Illinois Gas Co.*, 214 Ill. App. 3d at 214-15; *Santiemmo v. Days Transfer, Inc.*, 9 Ill. App. 2d 487, 502 (1956). Thus, a distinction exists between "income" and recoupment of capital. See

*Posey v. Tate*, 275 Ill. App. 3d 822, 826-27 (1995) (depreciation expenses do not constitute "income" for purposes of section 505). In essence, the respondent in the instant case is not richer than he was as a result of the settlement, but he is made more whole. Consequently, we determine that the trial court erred when it included the *entire* amount of the respondent's settlement in determining the increase the respondent would owe in child support.

The parties agree that the settlement includes a component representing lost earnings. The parties disagree as to the amount of the component representing lost earnings. As the respondent points out in his brief, taking into account the nature and extent of the respondent's injury, the respondent's personal injury settlement may have included compensation for the following elements of damage: (1) the disability and disfigurement resulting from the injury (see Illinois Pattern Jury Instructions, Civil, No. 30.04 (3d ed. 1995) (hereinafter IPI Civil 3d); (2) the pain and suffering experienced and reasonably certain to be experienced in the future as a result of the injury (see IPI Civil 3d, No. 30.05); (3) the reasonable expense of necessary medical care, treatment, and services received and the present cash value of these items reasonably certain to be received in the future as a result of the injury (see IPI Civil 3d, No. 30.06); and (4) the value of lost earnings and the present cash value of earnings reasonably certain to be lost in the future (see IPI Civil 3d, No. 30.07). While the first three of these elements are designed to recompense a party, the fourth is obviously meant to replace a party's lost stream of income. See *Lukhard v. Reed*, 481 U.S. 368, 375, 95 L. Ed. 2d 328, 336, 107 S. Ct. 1807, 1812 (1987) (lost wages in personal injury awards constitute income for purposes of Aid to Families with Dependent Children), *rev'g in part sub nom. Reed v. Health & Human Services*, 774 F.2d 1270 (4th Cir. 1985). We hold that reimbursement for lost earnings may be considered "income" for purposes of setting a support amount. See 750 ILCS 5/505(a)(3) (West 1994); *Reed*, 774 F.2d at 1274. Thus, a remand is necessary to determine that portion of the respondent's settlement which was or should have been apportioned to replace the respondent's past and future lost earnings. These amounts shall then be taken into account when the trial court considers the merits of the petitioner's petition to increase the amount of support.

The petitioner's reliance upon *In re Marriage of Dodds*, 222 Ill. App. 3d 99 (1991), which persuaded the trial court, is misplaced. In *Dodds*, this court agreed that a workers' compensation award constituted "income" for purposes of determining the amount of child support. *Dodds*, 222 Ill. App. 3d at 103. Initially, we note that workers'

compensation is specifically included in the definition of "income" for purposes of withholding funds for payment (750 ILCS 5/706.1(A)(4) (West 1994)), a factor which the *Dodds* court took into consideration (*Dodds*, 222 Ill. App. 3d at 103). By contrast, personal injury settlement awards are not specifically listed under that section. 750 ILCS 5/706.1(A)(4) (West 1994).

Additionally, *Dodds* is distinguishable because the Illinois Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 1994)) precludes the recovery of common-law damages and restricts an injured employee's recovery to only those damages listed in the Workers' Compensation Act (820 ILCS 305/5(a) (West 1994)). Hence, recovery for such items as pain and suffering, as well as disability for a permanent injury sustained by an employee (*Duley v. Caterpillar Tractor Co.*, 44 Ill. 2d 15, 18 (1969)), are barred. Instead, the Workers' Compensation Act substitutes the general elements of recovery in tort with a statutory recovery, which is computed by determining the wages which have been lost as well as the wages which will be lost in the future. 820 ILCS 305/8 (West 1994). For the loss of use of a body part, the Workers' Compensation Act limits compensation to a specified length of time, depending upon which body part was lost. 820 ILCS 305/8(e) (West 1994). The Workers' Compensation Act specifically provides that the amount of compensation payable "shall be computed *on the basis of the 'Average weekly wage.'* " (Emphasis added.) 820 ILCS 305/10 (West 1994). In essence, the Workers' Compensation Act takes away an employee's common-law rights of action and fixes limits to the amount to be recovered, but extends the liabilities of the employer. *Duley*, 44 Ill. 2d at 18. We agree with *Dodds* that reimbursement for lost earnings is properly considered income when fixing the amount of child support. See *Lukhard*, 481 U.S. at 375, 95 L. Ed. 2d at 336, 107 S. Ct. at 1812. However, in the instant case, the personal injury settlement was not a workers' compensation claim, and, absent evidence to the contrary, we believe it was comprised of more than just lost earnings. See IPI Civil 3d, Nos. 30.04, 30.05, 30.06, 30.07. Thus, because the Workers' Compensation Act is more concerned with recovery for lost wages rather than with the common-law recoveries for pain and suffering or disability, we are not constrained by *Dodds* to find that the entire amount of a personal injury settlement necessarily constitutes income.

While the issue of whether personal injury settlements constitute income for determining child support has not arisen in this state before the present case, other jurisdictions have had occasion to rule on this issue. While we are not bound by decisions of our sister states (*Estate of Welliver v. Alberts*, 278 Ill. App. 3d 1028, 1037 (1996)), we find their analyses enlightening.

In *In re Marriage of Durbin*, 251 Mont. 51, 823 P.2d 243 (1991), the Supreme Court of Montana, in a case with similar facts to the case at bar, issued an opinion nearly identical to the one we issue today. Where an individual was blinded and subsequently received a structured settlement of a personal injury suit, the court held that the entire amount of the settlement did *not* constitute "income" for purposes of determining whether to increase child support. *Durbin*, 251 Mont. at 60, 823 P.2d at 248-49. The court remanded the case, in part for a determination on the blinded ex-spouse's "actual and necessary financial needs including those associated with his medical care resulting from his blindness." *Durbin*, 251 Mont. at 60, 823 P.2d at 249. Also similar to the present case, the *Durbin* court acknowledged that it would be inappropriate to preclude completely consideration of the disabled ex-spouse's settlement from the child support determination because of the lost income component of the award. *Durbin*, 251 Mont. at 60, 823 P.2d at 248-49.

Likewise, in *Geyer v. Geyer*, No. 9—92—39 (Ohio Ct. App. November 25, 1992), the court reversed a trial court which had considered the full amount of a personal injury settlement when setting the amount of child support. The *Geyer* court remanded the cause for a finding "concerning for what this personal injury settlement was intended to compensate appellant." *Geyer*, slip op. at ____.

Our decision is further fortified by the opinion of *In re Marriage of Gallegos*, 174 Ariz. 18, 846 P.2d 831 (Ariz. App. 1992). In that case, a former wife received an increase in child support after her husband settled a personal injury claim which stemmed from an accident rendering him a quadriplegic. The Arizona Appellate Court reversed the trial court for considering the total amount of the former husband's settlement when increasing the amount of child support to be paid and remanded the case for a determination of "the necessary medical, drug and special care expenses Gallegos incurs each month." *Gallegos*, 174 Ariz. at 21, 846 P.2d at 835. The Arizona court stated that "[s]uch amounts should be deducted from his gross income in determining his income to calculate the child support obligation." *Gallegos*, 174 Ariz. at 21, 846 P.2d at 835. Similar to our case, the case was remanded for a determination of how much of the settlement would constitute income. *Gallegos*, 174 Ariz. at 21, 846 P.2d at 835.

Another court also had occasion to differentiate between aspects of a personal injury settlement for purposes of determining the amount of child support. *Whitaker v. Colbert*, 18 Va. App. 202, 442 S.E.2d 429 (1994). In *Whitaker*, a former wife sought an increase in child support after her former husband settled his claim for personal

injuries. However, the trial court would not consider the settlement as income and therefore denied the wife's petition. The Virginia Appellate Court affirmed, holding that the applicable statute on child support (Va. Code Ann. § 20—108.2 (Michie 1989)) applies to "income, not to capital recoupment." *Whitaker*, 18 Va. App. at 204, 442 S.E.2d at 431. Despite the fact that the former husband's personal injury claim included "an income element, lost wages," the court found that the record supported the trial court's finding that " 'it would be speculative at best as to how to attribute any part of th[e] settlement to prior lost wages as opposed to the other elements of damages.' " *Whitaker*, 18 Va. App. at 205, 442 S.E.2d at 431. Thus, the trial court's decision was affirmed, and no further inquiry was made into how much of the settlement pertained to lost wages. *Whitaker*, 18 Va. App. at 205, 442 S.E.2d at 431. In the case at bar, there are no findings to review in order to determine if the entire amount of the settlement was, in fact, lost income.

The cases from foreign jurisdictions which the petitioner cites are distinguishable from the case at bar. In *Cleveland v. Cleveland*, 249 N.J. Super. 96, 592 A.2d 20 (1991), the court held that the entire amount of a personal injury settlement, including the amount intended to compensate for lost wages, should be considered as income when determining the amount of child support. *Cleveland*, 249 N.J. Super. at 100, 592 A.2d at 22. However, unlike the present case, the relevant New Jersey statute requires a court to consider " '[a]ll sources of income *and assets* of each parent' " (emphasis added) when setting the amount of child support. *Cleveland*, 249 N.J. Super at 100, 592 A.2d at 22, quoting N.J. Stat. Ann. § 2A:34—23a (West 1987); see also *Babish v. Babish*, 361 Pa. Super. 118, 121, 521 A.2d 955, 957 (1987), quoting *Pawol v. Pawol*, 293 Pa. Super. 29, 34, 437 A.2d 974, 977 (1981) (in Pennsylvania, the court should consider " 'the full nature and extent of the parent's property interests and financial resources' "); *Butler v. Butler*, 339 Pa. Super. 312, 316, 488 A.2d 1141, 1142 (1985), quoting *Dugery v. Dugery*, 276 Pa. Super. 51, 54, 419 A.2d 90, 91 (1980) (court must " 'look beyond the actual earnings of the parties and consider the value and extent of their *** other financial resources' "). While portions of a personal injury settlement which grant compensation for pain and suffering, disability or disfigurement, and medical costs may not constitute income, they may constitute "assets," a broader term. Webster's Third New International Dictionary 131 (1986). However, in Illinois, courts are mandated, by statute, to consider initially only "net income" when determining the minimum amount of support required. 750 ILCS 5/505(a)(1) (West 1994).

Similarly, the differences between our own statutes on child support and the statutes of Colorado on the same topic distinguish the present case from *In re Marriage of Fain*, 794 P.2d 1086 (Colo. App. 1990). In *Fain*, the Colorado court found that payments from a personal injury settlement constituted "income," for purposes of determining the amount of child support, because the applicable Colorado statute expressly excluded certain benefits from its definition of "gross income." Colo. Rev. Stat. § 14—10—115(7)(a)(I)(B) (1986); *Fain*, 794 P.2d at 1087. Thus, the Colorado court was constrained in finding as it did due to the rule of statutory interpretation known as *expressio unis est exclusio alterius*, which provides that the mention of one thing implies the exclusion of another. *Condell Hospital v. Illinois Health Facilities Planning Board*, 124 Ill. 2d 341, 366 (1988); *Rochelle Disposal Service, Inc. v. Pollution Control Board*, 266 Ill. App. 3d 192, 201 (1994). In Illinois, the Illinois Marriage and Dissolution Act defines "net income," for purposes of determining child support, as "the total of all income from all sources," and then lists certain "deductions," but does not expressly exclude certain benefits. 750 ILCS 5/505(a)(3) (West 1994). Thus, the doctrine of *expressio unis est exclusio alterius* does not apply, and *Fain*, 794 P.2d 1086, is therefore distinguishable. See also *Klemetsrud v. Klemetsrud*, No. 02A01—9306—CV—00150 (Tenn. App. October 12, 1994).

The present case is also unlike *Sherburne County Social Services v. Riedle*, 481 N.W.2d 111 (Minn. App. 1992), and *Capano v. Capano*, No. CN91—8348 (Del. Fam. Ct. March 30, 1992). In both of those cases, the courts found that the settlement funds were explicitly included in the definition of "income" for purposes of determining the amount of child support. Minn. Stat. § 518.54 (1990); *Capano*, slip op. at ____ (citing instructions for the "Melson Formula," apparently a guideline used by Delaware courts). As we have noted, however, the applicable Illinois statute does not define "income." 750 ILCS 5/505(a)(3) (West 1994). Illinois law has not previously deemed compensation for injuries to be income, and, absent specific statutory language altering the traditional treatment of compensatory personal injury damages, we are not convinced we ought to redefine "income" to include such elements.

Finally, the petitioner points to *In re Marriage of Sullivan*, 258 Mont. 531, 853 P.2d 1194 (1993). However, *Sullivan* concerned whether workers' compensation benefits should constitute "income" for purposes of determining the amount of child support. Thus, *Sullivan* encompasses issues similar to those this court faced in *Dodds*, 222 Ill. App. 3d 99, and we refer to our earlier discussion of the applicability of *Dodds* to the instant case.

In light of our determination that the trial court erred in considering all of the respondent's personal injury settlement as "income" for purposes of determining the amount of child support and our remand for a determination on which part of the respondent's settlement pertained to lost earnings, discussing the other points of law raised in the respondent's brief would be premature.

The judgment of the circuit court of Kane County is reversed, and the cause is remanded for proceedings consistent with this opinion.

Reversed and remanded.

GEIGER and HUTCHINSON, JJ., concur.