NOTICE
Decision filed 04/05/16. The text of this decision may be changed or corrected prior to the filing of a Peti ion for Rehearing or the disposition of the same.

2016 IL App (5th) 150246

NO. 5-15-0246

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| SHELLEY S. FORTNER, n/k/a | ) | Randolph County. |
| Shelley S. Scanlan, | ) | |
| | ) | |
|     Petitioner-Appellee, | ) | |
| | ) | No. 06-D-62 |
| and | ) | |
| | ) | |
| ROBBIE W. FORTNER, | ) | Honorable |
| | ) | Eugene E. Gross, |
|     Respondent-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CHAPMAN delivered the judgment of the court, with opinion.
Justices Goldenhersh and Cates concurred in the judgment and opinion.

**OPINION**

¶ 1    The respondent, Robbie W. Fortner (Rob), appeals an order modifying child support.  The trial court found that the proceeds of a wrongful death settlement Rob received did not constitute income for purposes of child support.  However, the court found that the settlement increased Rob's financial resources.  As such, the court found that it constituted a material change in circumstances justifying a one-time upward deviation from the guideline amount of child support.  The court therefore ordered Rob to make a one-time payment of $15,000 as child support to the petitioner, Shelley S.

1

Fortner, n/k/a Shelley S. Scanlan. On appeal, Rob argues that (1) the court erred in ordering child support on the basis of the wrongful death settlement proceeds despite the court's finding that the proceeds did not constitute income; and (2) the court erred by ordering him to pay an amount that exceeded the needs of the child. In response, Shelley contends that the court erred in finding that the settlement proceeds did not constitute income. We affirm.

¶ 2    The parties were married in June 2002. Their daughter, Kylie, was born in October 2003. The parties separated in November 2004. In May 2006, Shelley filed a petition for dissolution. Two days later, the court entered an order dissolving the parties' marriage and incorporating the terms of their marital settlement agreement. Pursuant to that agreement, Kylie was to reside with Shelley, and Rob was ordered to pay $295.79 per month for child support. Subsequently, child support was modified twice due to changes in Rob's income. Prior to the petition to modify support that forms the basis of this appeal, Rob was ordered to pay $313.11 per month as child support, and both parties were directed to pay one-half of Kylie's private school tuition.

¶ 3    On June 18, 2014, Shelley filed a petition to modify child support, alleging that Rob's income had increased. The court held a hearing in the matter in January 2015. At the beginning of the hearing, counsel for Shelley clarified that Shelley was seeking a modification of child support related solely to the proceeds of the wrongful death settlement. He explained that although Rob's regular income had increased, the increase was slight.

¶4　Rob testified about his father's death and the wrongful death settlement. He testified that his father, Gary Fortner, went to the emergency room, where he was diagnosed with heartburn and sent home. At home, Gary experienced what he believed to be symptoms of a heart attack. Rob testified that Gary did not want to go back to the emergency room "because he felt like they didn't do what they should." Instead, he went to his doctor's office. There, he suffered a fatal heart attack. Paramedics from Medstar, an ambulance company, attempted to revive him, but were not successful.

¶5　Rob opened an estate for purposes of bringing a wrongful death action. He was Gary Fortner's only heir. At the time of his death, Gary Fortner owned an RV and various items of personal property; however, the only substantial asset of the estate was the wrongful death claim. Ultimately, the case was settled for $250,000. After deductions for attorney fees and litigation costs, Rob received $169,725.48.

¶6　A settlement statement was admitted into evidence. The statement showed the deductions for fees and costs. It stated that the net proceeds of $169,725.48 were to be distributed to "Robbie W. Fortner, as Independent Administrator." The statement did not include any allocation of the settlement toward the different types of damages. Rob testified that he was not aware of any document showing an allocation of the settlement. He further testified that he never gave a deposition in the case, and he was never asked about the nature of his relationship with his father. He testified, however, that his father's death was one of the worst things he experienced in his life. He also testified that he did not rely on his father for financial help.

3

¶ 7     Rob testified about how he spent the settlement proceeds. He used $15,000 to pay for Gary's funeral expenses, and he paid an $8,000 bill from Medstar. Rob purchased a minivan for $19,000 and a used Camaro for $15,000. He used $80,000 as a down payment on a house. In addition, he estimated that he spent $20,000 to $25,000 on carpeting and flooring in the house. He testified that before buying the house, he was living in a rental home because he previously lost a home to foreclosure. Finally, Rob testified that he deposited approximately $1,000 to $1,200 of the funds into a bank account.

¶ 8     Shelley testified regarding increased expenses for Kylie. She testified that she was required to pay $4,780 out-of-pocket for Kylie's braces. Pursuant to an agreement, she was paying $213 per month. She further testified that Kylie's health insurance cost $200 per month. In addition, Shelley testified that she incurred expenses for Kylie to participate in sports. Finally, she testified that as Kylie grew up, her clothes and "in general just everything" were more expensive. Shelley acknowledged that she did not discuss Kylie's need for braces with Rob.

¶ 9     The trial court then considered the arguments of counsel. Rob argued that the settlement was analogous to a personal injury settlement. He pointed to *Villanueva v. O'Gara*, where the Second District held that damages for pain and suffering are *not* considered to be income because they make the plaintiff whole rather than increasing the plaintiff's wealth. *Villanueva v. O'Gara*, 282 Ill. App. 3d 147, 150 (1996). Rob argued that the wrongful death settlement "can only be shown" to represent damages for his grief and suffering and for the loss of his father's society because he was not financially

4

dependent on his father. He further argued that such damages are similar to damages for pain and suffering in personal injury suits. Thus, he contended, none of the settlement proceeds are income for purposes of child support. He also pointed out that he no longer had the settlement proceeds.

¶ 10 Shelley argued that the entire settlement should be treated as an inheritance because Rob received the proceeds through the estate of Gary Fortner as Gary's sole heir. She argued that an inheritance is income for child support purposes for two reasons. First, an inheritance is analogous to a gift, and gifts have been held to constitute income. Second, there is a presumption that funds received are income. She further argued that Rob treated the settlement proceeds as income. Alternatively, Shelley argued that even if the court did not find the settlement proceeds to be income, it should find that the settlement was a substantial change in circumstances justifying a modification of child support. She explained that the settlement increased Rob's resources and his ability to pay support for Kylie.

¶ 11 On January 29, 2015, the court entered a detailed written order. The court first noted that the Illinois Marriage and Dissolution of Marriage Act (Dissolution Act) (750 ILCS 5/101 *et seq.* (West 2014)) provides an expansive definition of income. However, the court also noted that Illinois courts have found that the proceeds of personal injury awards and settlements do not constitute income for purposes of child support. The court stated that if Gary Fortner had been a wealthy man when he died, Rob "would have inherited a sizeable estate." The court explained that such an inheritance "would have increased his financial resources and quality of life," but "would not have been

5

characterized as 'income'."[1] The court found that "wrongful death proceeds are more akin to an 'asset' in that it represents the value of life lost to the recipient and has no resemblance to lost wages." The court thus held that no portion of the settlement proceeds was income.

¶ 12 The court went on to consider whether there were any factors favoring an upward deviation from the guideline amount of child support. The court found that the settlement improved Rob's financial resources and "drastically improved" his standard of living. The court further found that the settlement did not improve Kylie's standard of living, which would have occurred if the settlement was received while the parties were married. The court concluded that a one-time upward deviation from the guideline amount was therefore appropriate. The court ordered Rob to make a one-time lump-sum payment of $15,000.

¶ 13 Rob subsequently filed a motion to reconsider. The court denied the motion after a hearing. This appeal followed.

¶ 14 Rob argues that the court erred in ordering him to pay a lump-sum payment of additional child support on the basis of the wrongful death settlement proceeds after the

---

[1]We note that although there are no published Illinois decisions addressing the question of whether an inheritance constitutes income for purposes of child support, the statutory definition of income is broad enough that it would likely include an inheritance. See Erica Bertini, *Inheritance is Income for Purposes of Child Support Under the Marriage and Dissolution of Marriage Act*, 25 DCBA Brief 26, 29 (2013).

court found that they did not constitute income. He further argues that the court erred in awarding an amount that exceeded Kylie's needs. Shelley argues that the court erred when it found that the settlement proceeds did not constitute income. Before addressing the merits of these contentions, we must consider Rob's claim that Shelley's argument is not properly before us.

¶ 15    Rob argues that we may not consider Shelley's argument because she did not file a cross-appeal. An appellee may not raise claims of error unless she timely files a cross-appeal or a separate appeal. See *Lagen v. Balcor Co.*, 274 Ill. App. 3d 11, 14 (1995); Ill. S. Ct. R. 303(a)(3) (eff. May 30, 2008). However, Shelley does not seek relief in this appeal; she only asks this court to affirm the trial court's ruling. We may affirm the trial court's ruling on any basis appearing in the record, whether or not that was the basis relied upon by the court. *Benson v. Stafford*, 407 Ill. App. 3d 902, 912 (2010). Thus, we may consider Shelley's argument that the settlement proceeds are properly characterized as income as an alternative basis for upholding the court's decision. See *Paul B. Episcope, Ltd. v. Law Offices of Campbell & Di Vincenzo*, 373 Ill. App. 3d 384, 395-96 (2007). We agree with Shelley that the settlement constitutes income.

¶ 16    Generally, we review a trial court's ruling on a motion to modify child support to determine whether the trial court abused its discretion. *In re Marriage of Rogers*, 213 Ill. 2d 129, 135 (2004). Here, however, our decision requires us to consider whether the proceeds from the wrongful death settlement meet the statutory definition of income for purposes of child support. See 750 ILCS 5/505(a) (West 2014). We review *de novo* the

7

trial court's interpretation of this statutory definition. *In re Marriage of Rogers*, 213 Ill. 2d at 135-36.

¶ 17 One key purpose of the Dissolution Act is to ensure "reasonable provisions for \*\*\* minor children." *In re Marriage of Sharp*, 369 Ill. App. 3d 271, 280 (2006); see *In re Marriage of Klomps*, 286 Ill. App. 3d 710, 714 (1997) (calling this one of the "overriding purposes" of the Dissolution Act). The pertinent statute defines net income for child support as "the total of all income from all sources" minus various enumerated deductions. 750 ILCS 5/505(a)(3) (West 2014). Courts of this state have consistently held that this is a broad and expansive definition. See, *e.g.*, *In re Marriage of Mayfield*, 2013 IL 114655, ¶ 16; *In re Marriage of Rogers*, 213 Ill. 2d at 136; *Department of Public Aid ex rel. Jennings v. White*, 286 Ill. App. 3d 213, 217 (1997). Our supreme court has explained that " 'income' is simply '\*\*\* a gain or recurrent benefit \*\*\* received by an individual' " (*In re Marriage of Rogers*, 213 Ill. 2d at 136 (quoting Webster's Third New International Dictionary 1143 (1986))) or " '[t]he money or other form of payment that one receives' " (*id.* at 137 (quoting Black's Law Dictionary 778 (8th ed. 2004))). The supreme court has also said that income "includes gains and benefits that enhance a noncustodial parent's wealth and facilitate that parent's ability to support a child." *In re Marriage of Mayfield*, 2013 IL 114655, ¶ 16 (citing *In re Marriage of Rogers*, 213 Ill. 2d at 137).

¶ 18 Most often, these gains and benefits come from sources such as employment, investments, royalties, or gifts. *Id.* (citing *In re Marriage of Rogers*, 213 Ill. 2d at 137). However, the definition of income is not limited to these types of payments. Illinois

8

courts have found all of the following types of payments received by noncustodial parents to fall within the statutory definition of income: lump-sum worker's compensation awards, individual retirement account distributions, military allowances, and pensions (*In re Marriage of Baumgartner*, 384 Ill. App. 3d 39, 54 (2008)); investment income and earnings from bonds and securities (*Jennings*, 286 Ill. App. 3d at 218); severance pay and deferred compensation payments (*id.*); distributions from a trust (*In re Marriage of Sharp*, 369 Ill. App. 3d at 280-81); and gifts from parents (*In re Marriage of Rogers*, 213 Ill. 2d at 137).

¶ 19    Nonrecurring payments are included in the statutory definition of income. *Id.* at 138; *In re Marriage of Hart*, 194 Ill. App. 3d 839, 850 (1990). However, the fact that such payments are unlikely to recur may be a reason to deviate below the guideline amount. *In re Marriage of Rogers*, 213 Ill. 2d at 139.

¶ 20    Finally, we must emphasize that the Dissolution Act creates a rebuttable presumption that any such gain or benefit is income for child support unless specifically excluded by the statute. *In re Marriage of Sharp*, 369 Ill. App. 3d at 280; *Jennings*, 286 Ill. App. 3d at 218. With these principles in mind, we turn to the merits of Rob's contentions.

¶ 21    Rob's argument that the court erred in ordering child support based on the settlement is twofold. He argues that the settlement proceeds do not constitute "income" within the meaning of the Dissolution Act. He further argues that Shelley did not demonstrate that a substantial change in circumstances occurred.

9

¶ 22    In support of his contention that the settlement proceeds did not constitute income, Rob relies heavily on the Second District's decision in *Villanueva v. O'Gara*. That case involved a settlement in a product liability case based on an injury to the noncustodial father's hand. *Villanueva*, 282 Ill. App. 3d at 148-49. The mother filed a petition requesting an increase in child support in the form of a one-time payment of 20% of the father's net proceeds from the settlement. *Id*. at 149. The trial court granted the mother's petition, finding that the entire settlement constituted income for purposes of child support. *Id*.

¶ 23    On appeal, the Second District found that although portions of the settlement may represent income, the trial court erred by including "the *entire* amount of the [father's] settlement" in determining his income. (Emphasis in original.) *Id*. at 151. The court explained that while income generally represents a gain or an increase in wealth, "personal injury awards serve to make an injured party whole." *Id*. at 150. The court went on to explain that damages for pain and suffering, disability and disfigurement, and the reasonable cost of necessary medical care or treatment "are designed to recompense" an injured party, while damages for lost wages are "meant to replace a party's lost stream of income." *Id*. at 151. The court held that only the damages attributable to reimbursement of lost wages could be considered income for purposes of calculating child support. The court therefore remanded the case to the trial court to determine what portion of the settlement proceeds represented lost earnings. *Id*.

¶ 24    Rob argues that damages for his grief and for the loss of his father's society are similar to damages for pain and suffering. He further asserts that we must find that the

10

entire settlement represents damages for grief and loss of society because he testified that he was not financially dependent on his father. We believe *Villanueva* was wrongly decided, and we decline to follow it. For this reason, we reject Rob's argument.

¶ 25 We first note that neither this court nor our supreme court has directly addressed the question of whether damages for either personal injury settlements or wrongful death settlements constitute income for purposes of child support. The decisions of other districts of the appellate court are not binding on this court. We may therefore "part company" with the decisions of other districts if we find that those decisions were not correctly decided. *O'Casek v. Children's Home & Aid Society of Illinois*, 229 Ill. 2d 421, 440 (2008).

¶ 26 We believe the Second District's decision in *Villanueva* is at odds with the principle that the broad and expansive statutory definition of child support includes all benefits and gains received by a supporting parent unless such gains are excluded by statute. See *In re Marriage of Rogers*, 213 Ill. 2d at 136; *Jennings*, 286 Ill. App. 3d at 217. The trial court in this case found that, with the exception of the $23,000 used to pay for Gary's expenses, the settlement proceeds represented an increase in Rob's financial resources. As we discussed at length previously, that is precisely what income is−something which "enhance[s] a noncustodial parent's wealth and facilitate[s] that parent's ability to support a child" (*In re Marriage of Mayfield*, 2013 IL 114655, ¶ 16).

¶ 27 It is also worth noting the *Villanueva* court cited three out-of-state cases in support of its decision. See *Villanueva*, 282 Ill. App. 3d at 153-54. Although the decisions of

11

other jurisdictions may be persuasive (see *id.* at 152), we do not believe these three cases support the conclusion reached by the *Villanueva* court.

¶ 28    In the Montana case of *In re Marriage of Durbin*, for example, the trial court found that a father's personal injury awards were not income for purposes of determining child support.  *In re Marriage of Durbin*, 823 P.2d 243, 248 (Mont. 1991).  In reaching this conclusion, the trial court reasoned that the father's damage award did not increase his wealth because the award was intended to " 'restore him to the *status quo ante*.' "  *Id.* The trial court also found that the father's future medical expenses resulting from his injuries were " 'anticipated to be substantial' " and that the money received from the award was needed to cover these costs.  *Id.*

¶ 29    In reversing this ruling on appeal, the Montana Supreme Court first noted that under Montana law, much like Illinois law, courts are to consider "all income from all sources" in determining child support.  *Id.*  The court then explained that it would be inappropriate to exclude the personal injury awards from the father's income in part because one purpose of the awards is to replace the father's lost income.  *Id.* at 248-49. However, the court also found that it would be inappropriate to consider the awards as income without taking into account the father's related medical expenses.  *Id.* at 248.  The court did not address the question of whether damages for pain and suffering were to be considered income.  However, the court remanded the matter to the trial court with directions "to subtract [the father's] actual and necessary needs including those associated with his medical care from his financial resources, *and consider the remaining amount* in

12

determining a future child support modification." (Emphasis added.) *Id*. at 249. The remaining amount would include any damages for pain and suffering.

¶ 30    Similarly, in the Arizona case of *In re Marriage of Gallegos*, the appeals court found it necessary to consider the extent to which a personal injury award was intended to provide resources to pay for the father's related medical expenses, but did not consider the question of damages for pain and suffering. *In re Marriage of Gallegos*, 846 P.2d 831 (Ariz. Ct. App. 1992). There, the trial court increased child support based on the father's personal injury settlement "without any consideration or reduction for [his] increased medical and other expenses, necessary to treat his quadriplegic condition." *Id.* at 832. The appellate court reversed, directing the trial court on remand to determine the amount of medical care and other expenses the father would be required to pay "from the income he receives from his invested settlement amount, and [to] deduct those expenses from gross income before applying the balance as set forth in the guidelines." *Id*. Again, the balance would presumably have included damages for pain and suffering.

¶ 31    The *Villanueva* court also cited *Geyer v. Geyer*, No. 9-92-39, 1992 WL 352642 (Ohio Ct. App. Nov. 25, 1992), an unreported decision of an Ohio appeals court. There, the appeals court reversed an order modifying child support and remanded the matter to the trial court with directions to determine what the father's personal injury settlement was intended to compensate him for. *Id.* at \*2. The *Geyer* court did not provide any guidance concerning what elements of damages should be included in the father's income or excluded from his income.

13

¶ 32    Thus, while all three cases stand for the proposition that at least some portions of damage awards should be excluded income for child support purposes, none of the cases supports the conclusion that damages for pain and suffering, disability, or, as in this case, damages for emotional grief and loss should be excluded from income.  In light of the broad, inclusive definition of income in the Dissolution Act, we conclude that such damages are properly included as income within the meaning of the Dissolution Act.  We therefore conclude the settlement proceeds were income for purposes of child support.

¶ 33    This conclusion allows us to resolve Rob's remaining arguments easily.  As stated previously, Rob argues that Shelley did not demonstrate that a substantial change in circumstances had occurred.  Generally, child support may only be modified "upon a showing of a substantial change in circumstances."  750 ILCS 5/510(a)(1) (West 2014).  However, child support may be modified without showing a substantial change in circumstances if there is "an inconsistency of at least 20% *** between the amount of the existing order and the amount of child support that results from application of the guidelines" to the supporting parent's current income.  750 ILCS 5/510(a)(2)(A) (West 2014).

¶ 34    Here, the settlement proceeds resulted in such an inconsistency for the year in which Rob received the settlement.  As we stated previously, the court found that $23,000 from the settlement was used to pay Gary Fortner's funeral expenses and his Medstar bill.  Although the court did not call the remaining $146,725 of the settlement proceeds "income," the court did find that these funds increased Rob's resources and improved his standard of living.  Based on our foregoing discussion, we believe this

amount is more properly characterized as nonrecurring income in the year it was received. Applying the guideline of 20% to this figure yields a result of $29,345 in total additional child support, which is approximately $2,445 per month. This is far more than 20% above the $313 per month Rob was paying. Therefore, the court could properly modify child support to order a one-time payment without finding any substantial change in other circumstances.

¶ 35    Finally, Rob argues that the court abused its discretion in awarding child support in an amount that exceeded Kylie's demonstrated needs. We disagree. We acknowledge that most of Shelley's testimony regarding Kylie's increased financial needs was vague. Shelley did testify that she incurred specified additional expenses for Kylie's braces and health insurance. Beyond that, however, she merely asserted that Kylie's clothing and "just everything for Kylie" had become more expensive. Nevertheless, we may presume that a child's needs increase over time as she grows older and the cost of living increases, particularly where, as here, there has been an increase in the noncustodial parent's income. See *In re Marriage of Adams*, 348 Ill. App. 3d 340, 343 (2004).

¶ 36    Moreover, we believe that the court properly considered the extent to which Kylie would have shared in the increased standard of living Rob was able to afford by virtue of the settlement proceeds had the marriage not ended. See 750 ILCS 5/505(a)(2)(c) (West 2014). We also note that the amount ordered was less than the 20% guideline. Although this was justified by the nonrecurring nature of the income and the fact that Rob had spent it, we nevertheless do not find it to be a "windfall" to Shelley and Kylie. See *In re Marriage of Singleteary*, 293 Ill. App. 3d 25, 36 (1997) (explaining that courts "must

15

consider the standard of living the children would have enjoyed absent parental separation and dissolution," and that therefore "child support is not to be based solely upon the shown needs of the child").

¶ 37    For the foregoing reasons, we affirm the order of the trial court.


¶ 38    Affirmed.

2016 IL App (5th) 150246

NO. 5-15-0246

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| SHELLEY S. FORTNER, n/k/a | ) | Randolph County. |
| Shelley S. Scanlan, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | No. 06-D-62 |
| and | ) | |
| | ) | |
| ROBBIE W. FORTNER, | ) | Honorable |
| | ) | Eugene E. Gross, |
| Respondent-Appellant. | ) | Judge, presiding. |

**Opinion Filed:**       April 5, 2016

_____

**Justices:**       Honorable Melissa A. Chapman, J.

Honorable Richard P. Goldenhersh, J., and
Honorable Judy L. Cates, J.,
Concur

_____

**Attorney**       Jordan D. Gremmels, Fisher, Kerkhover, Coffey & Gremmels,
**for**       1300 ½ Swanwick Street, P.O. Box 191, Chester, IL 62233
**Appellant**

_____

**Attorney**       Lucas H. Liefer, Cooper & Liefer Law Office, 205 East Market,
**for**       P.O. Box 99, Red Bud, IL 62278
**Appellee**

_____